Docket No. 101261.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

VALLEY FORGE INSURANCE COMPANY *et al.*, Appellants, v.
SWIDERSKI ELECTRONICS, INC., *et al.*, Appellees.

*Opinion filed November 30, 2006.*

JUSTICE GARMAN delivered the judgment of the court, with
opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride,
Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

Ernie Rizzo, doing business as Illinois Special Investigations, filed
suit individually and on behalf of a class of those similarly situated
against Swiderski Electronics, Inc., based on Swiderski's alleged
sending of unsolicited facsimile advertisements. Swiderski tendered
the defense of the suit to Valley Forge Insurance Company and
Continental Casualty Corporation pursuant to insurance policies
Swiderski had purchased from them. Subsequently, the insurers
sought a declaratory judgment that they had no duty to defend
Swiderski against Rizzo's lawsuit (735 ILCS 5/2–701 (West 2002)).
The parties filed cross-motions for summary judgment regarding the
insurers' duty to defend (735 ILCS 5/2–1005 (West 2002)), and the
circuit court of McHenry County granted summary judgment in favor

of Swiderski. The appellate court affirmed. 359 Ill. App. 3d 872. The issue before us is whether the insurers have a duty to defend Swiderski against Rizzo's lawsuit under the insurance policies. We hold that they do and affirm the judgment of the appellate court.

## BACKGROUND

Ernie Rizzo operates a private investigation business known as Illinois Special Investigations. On June 19, 2003, Rizzo filed a three-count complaint in the McHenry County circuit court against Swiderski Electronics, Inc. According to the complaint, Swiderski sent Rizzo and numerous other individuals a fax advertisement with information on the sale, rental, and service of various types of electronic equipment. The complaint alleges that, by faxing copies of the advertisement without first obtaining the recipients' permission to do so, Swiderski (1) violated section 227 of the Telephone Consumer Protection Act (TCPA) (47 U.S.C. §227 (2000)), (2) unlawfully converted the fax machine toner and paper of those who received the faxes, and (3) violated section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2002)).[1] The complaint seeks damages, attorney fees, and injunctive relief on behalf of all individuals who received an unsolicited fax advertisement from Swiderski within the four-year period preceding the filing of the complaint. As yet, no class has been certified.

Swiderski tendered the defense of Rizzo's lawsuit to its primary insurer, Valley Forge Insurance Company, and its excess insurer, Continental Casualty Corporation. Under the Valley Forge policy, Valley Forge has a duty to defend Swiderski against any suit seeking damages caused by "personal and advertising injury." "Personal and advertising injury" includes injury that arises out of one or more of the following offenses:

> "a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;

---

[1]On January 22, 2004, the circuit court dismissed Rizzo's Consumer Fraud Act claim without prejudice. That claim is not at issue in this appeal.

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. *Oral or written publication, in any manner, of material that violates a person's right of privacy*;

f. The use of another's advertising idea in your 'advertisement'; or

g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement." (Emphasis added.)

The policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." It does not define "publication," "material," or "privacy." The policy excludes coverage for " '[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' "

The Valley Forge policy also obligates Valley Forge to defend Swiderski against any suit seeking damages caused by "property damage." The policy defines "property damage" as:

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

The policy applies to "property damage" only if the damage is caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident." Coverage for "property damage" does not apply to " 'property damage' expected or intended from the standpoint of the insured.' "

The relevant provisions of the policy Continental issued to Swiderski are essentially the same as the provisions of the Valley Forge policy discussed above.[2] Like the Valley Forge policy, the Continental policy covers "advertising injury," which is defined as:

> "a. Oral, written, televised or videotaped publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> b. *Oral, written, televised or videotaped publication of material that violates a person's right of privacy*;
>
> c. The use of another's advertising idea in your advertisement; or
>
> d. Infringement upon another's copyright, trade dress or slogan in your advertisement." (Emphasis added.)

The Continental policy also covers "property damage" with provisions nearly identical to those contained in the Valley Forge policy.

On October 29, 2003, Valley Forge and Continental informed Swiderski that the claims set forth in Rizzo's complaint were not covered by the policies they issued to Swiderski. Subsequently, on January 9, 2004, the insurers sought a declaration from the McHenry County circuit court that they had no duty to defend or indemnify Swiderski with regard to Rizzo's lawsuit. Thereafter, Swiderski filed a counterclaim against the insurers and a third-party claim against Rizzo, asserting that Rizzo's TCPA claim and conversion claim were covered by the policies.

The parties filed cross-motions for partial summary judgment on the issue of the insurers' duty to defend. On July 23, 2004, after oral argument, the circuit court granted Swiderski's motion on the ground that the insurers had a duty to defend Swiderski under the policies' "advertising injury" provision. Because the court found a duty to defend under the "advertising injury" provision, the court did not rule on whether a duty to defend existed on the basis of the policies'

---

[2]Given the policies' similarity, the insurers have simply referred to the language of the Valley Forge policy as representative of both policies in the briefs submitted to this court.

"property damage" provision. The court was not asked to rule on whether the insurers had a duty to indemnify Swiderski.

Subsequently, in an order dated September 9, 2004, the circuit court entered judgment in favor of Swiderski. The order required the insurers to pay the defense costs already incurred in the underlying action, which amounted to $25,222.22. The order also required the insurers to advance future defense costs to Swiderski pending resolution of any appeal. In addition, the circuit court certified the duty-to-defend issue for immediate appeal pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)).

The appellate court affirmed the judgment of the circuit court. 359 Ill. App. 3d at 891. The court observed that almost all prior litigation regarding insurance coverage for TCPA claims has proceeded in federal court, and that the federal courts are divided as to whether insurance provisions like the provision at issue in this case provide coverage for fax advertising claims under the Act. 359 Ill. App. 3d at 879-80. After evaluating the federal case law, the appellate court concluded that, pursuant to Illinois' rules of insurance-policy construction, the insurers had a duty to defend Swiderski against Rizzo's lawsuit. 359 Ill. App. 3d at 883. Specifically, the court held that the insurers owed Swiderski a duty to defend pursuant to the "advertising injury" provision of their policies. 359 Ill. App. 3d at 889.

Comparing the allegations in Rizzo's complaint with the language of the "advertising injury" provision, the appellate court determined that an average person would reasonably interpret that provision as affording coverage. 359 Ill. App. 3d at 885. The court rejected the insurers' argument that, in the context of the insurance policies, "publication" requires injurious communication to a third party. 359 Ill. App. 3d at 885-86. The court reasoned that, given its plain and ordinary meaning, the term "publication" does not convey to a reasonable person an intention to cover only communications sent to third parties. 359 Ill. App. 3d at 886. The court also rejected the insurers' argument that the "advertising injury" provision covers only violations of secrecy interests, not intrusions upon seclusion. 359 Ill. App. 3d at 886-87. The court opined that a reasonable person would understand the term "privacy" to encompass the right to be left alone. 359 Ill. App. 3d at 887. In light of these considerations, the court concluded that sending unsolicited fax advertisements falls potentially

within the coverage of the policies' "advertising injury" provision. 359 Ill. App. 3d at 887. Because the court determined that the insurers had a duty to defend Swiderski pursuant to that provision, it did not consider whether the insurers owed Swiderski a duty to defend under the "property damage" provision. 359 Ill. App. 3d at 889.

The insurers filed a petition for leave to appeal (210 Ill. 2d R. 315), which we allowed. We granted the American Economy Insurance Company and American States Insurance Company leave to file an *amicus curiae* brief. 210 Ill. 2d R. 345.


ANALYSIS

I

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992); 735 ILCS 5/2–1005(c) (West 2002). A circuit court's entry of summary judgment is subject to *de novo* review (*General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 153 (2005)), and the construction of an insurance policy, which presents a question of law, is likewise reviewed *de novo* (*Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004)).


II

The issue we must decide is whether the insurers have a duty to defend Swiderski against Rizzo's lawsuit. The insurers argue they do not. Initially, they claim that the "advertising injury" provision in the policies, which affords coverage for liability resulting from an insured's "written *** publication *** of material that violates a person's right of privacy," is applicable only where the content of the published material reveals private information about a person that violates the person's right of privacy. According to the insurers, the basis of the TCPA liability alleged in Rizzo's complaint is the mere sending of an unsolicited fax containing no private information. This type of claim, they argue, does not give rise to the "content-based privacy" coverage provided by the policies. As further support for their position, the insurers emphasize that the TCPA's fax-ad

-6-

prohibitions make no reference to "publication" or "right of privacy," suggesting that the policies, which refer both to "publication" and "right of privacy," were not intended to cover TCPA claims.

The insurers also argue that they have no duty to defend Swiderski under the "property damage" provision of the policies. They point out that the policies expressly exclude coverage for any property damage that is "expected or intended from the standpoint of the insured." According to the insurers, the property damage alleged in Rizzo's complaint, the loss of fax paper and toner, is the expected outcome of sending any fax, which renders the exclusion applicable. In addition, the insurers argue that the damage that occurs when a fax is sent does not constitute "property damage" within the meaning of the policies. They point out that, under the policies, "property damage" must be caused by an "occurrence," which is defined as an "accident." According to the insurers, under Illinois law, the natural and ordinary consequences of an act do not constitute an accident, and the loss of fax paper and toner are the natural and ordinary consequences of sending a fax.

In response, defendants Swiderski and Rizzo argue that Rizzo's complaint alleges facts potentially within the coverage of the policies, and that, as a result, the insurers have a duty to defend Swiderski against Rizzo's lawsuit. Defendants initially urge us to focus on the plain and ordinary meaning of the language used in the "advertising injury" provision of the policies. They assert that "publication" includes the communication of information to the public, "material" has a broad meaning that encompasses fax advertisements, and one's "right of privacy" includes one's interest in "seclusion," or being left alone. Defendants contend that, based on the plain meaning of the policies' language, a reasonable person would understand that an injury "arising out of *** written publication, in any manner, of material that violates a person's right of privacy" potentially occurs when one sends fax advertisements to thousands of recipients without first obtaining their permission to do so.

Alternatively, defendants argue that the insurers have a duty to defend Swiderski based on the "property damage" provision of the policies. Defendants contend that injury that occurs to the recipient of a fax when a party sends the fax with the mistaken belief that the fax is welcome qualifies as accidental injury, and thus potentially falls

within the policies' definition of "property damage." Relatedly, defendants argue that the policies' exclusion for property damage that is "expected or intended from the standpoint of the insured" is inapplicable, because when a party sends a fax with the mistaken belief the fax is welcome, the party neither intends nor reasonably expects that injury will result.

### III

A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. *Central Illinois Light*, 213 Ill. 2d at 153. If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written. *Crum & Forster*, 156 Ill. 2d at 391. However, if the words used in the policy are ambiguous, they will be strictly construed against the drafter. *Central Illinois Light*, 213 Ill. 2d at 153. Words are ambiguous if they are reasonably susceptible to more than one interpretation (*Outboard Marine*, 154 Ill. 2d at 108), not simply if the parties can suggest creative possibilities for their meaning (*Laphman-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529 (1995)), and a court will not search for ambiguity where there is none (*Crum & Forster*, 156 Ill. 2d at 391).

To determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy. *Outboard Marine*, 154 Ill. 2d at 107-08. The allegations must be liberally construed in favor of the insured. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). If the facts alleged fall within, or potentially within, the policy's coverage, the insurer is obligated to defend its insured. *General Agents Insurance*, 215 Ill. 2d at 155. This is true even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the

-8-

potential coverage of the policy. *United States Fidelity*, 144 Ill. 2d at 73. Thus, an insurer may not justifiably refuse to defend a lawsuit against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy. *General Agents Insurance*, 215 Ill. 2d at 154.

IV

We turn first to a comparison of the allegations in Rizzo's complaint regarding the TCPA and the insurance policies' "advertising injury" provision. The complaint alleges that Swiderski violated the TCPA by sending unsolicited fax advertisements to fax machines throughout Illinois. The TCPA makes it "unlawful for any person within the United States *** to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. §227(b)(1)(C) (2000). An "unsolicited advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without the person's prior express invitation or permission." 47 U.S.C. §227(a)(4) (2000). The Act creates a private right of action that permits recipients of unwanted fax advertisements to seek injunctive relief and damages, and treble damages may be awarded if a court finds that the sender of a fax acted "willfully and knowingly." 47 U.S.C. §227(b)(3) (2000).

As mentioned, the "advertising injury" provision relevant to Rizzo's TCPA claim is nearly identical in the Valley Forge policy and the Continental policy. The Valley Forge policy provides, in pertinent part, that "advertising injury" includes injury from "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." The Continental policy provides that "advertising injury" includes "[o]ral, written, televised or videotaped publication of material that violates a person's right of privacy." For present purposes, we need not distinguish between the Valley Forge policy and the Continental policy, as the phrase "written *** publication *** of material that violates a person's right of privacy," which appears in both, is central to our inquiry into whether the allegations in Rizzo's complaint fall potentially within the policies' coverage.

The essence of a TCPA fax-ad claim is that one party sends another an unsolicited fax advertisement. See 47 U.S.C. §227(b)(1)(C) (2000). The receipt of an unsolicited fax advertisement implicates a person's right of privacy insofar as it violates a person's seclusion, and such a violation is one of the injuries that a TCPA fax-ad claim is intended to vindicate. The cases cited to us by both sides overwhelmingly confirm as much. See, *e.g.*, *Park University Enterprises, Inc. v. American Casualty Co. of Reading, Pennsylvania*, 442 F.3d 1239, 1249 (10th Cir. 2006) ("Courts have consistently held the TCPA protects a species of privacy interests in the sense of seclusion"); *Resource Bankshares Corp. v. St. Paul Mercury Insurance Co.*, 407 F.3d 631, 639-40 (4th Cir. 2005) ("[T]he harm occasioned by unsolicited faxes involves protection of some sort of 'privacy.' Junk faxes cause some economic damage *** and what might be called *some* kind of harm to privacy ***. The TCPA's private right of action obviously meant to remedy and prevent these twin harms" (emphasis in original)); *American States Insurance Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939, 942 (7th Cir. 2004) ("[A]n unexpected fax, like a jangling telephone or a knock on the door, can disrupt a householder's peace and quiet ***. Section 227(b)(1)(C) doubtless promotes this (slight) interest in seclusion, as it also keeps telephone lines from being tied up and avoids consumption of the recipients' ink and paper"); *Melrose Hotel Co. v. St. Paul Fire & Marine Insurance Co.*, 432 F. Supp. 2d 488, 500-01 (E.D. Pa. 2006) ("It is clear that the TCPA aims in part to protect privacy. *** Congress took aim at the *intrusive* nature of unsolicited faxes. Much the same way a telemarketing call invades one's right to be left alone, an unsolicited fax intrudes upon the right to be free from nuisance" (emphasis in original)); *Western Rim Investment Advisors, Inc. v. Gulf Insurance Co.*, 269 F. Supp. 2d 836, 847 (N.D. Tex. 2003) ("The stated purpose of the TCPA *** is to protect the privacy of individuals from receiving unsolicited faxed advertisements"). Thus, the TCPA can fairly be described as protecting a privacy interest in seclusion.

Turning to the TCPA claim set forth in Rizzo's complaint, we note that it makes no mention of the right of privacy. This, however, is unproblematic, as a violation of privacy in the sense of a violation of seclusion is implicit in a TCPA fax-ad claim, and the complaint clearly

-10-

alleges that Swiderski "violated 47 U.S.C. §227 *et seq*. by transmitting [the attached fax advertisement] to [Rizzo] and the other members of the class without obtaining their prior express consent."

Given that the TCPA protects a fax recipient's privacy interest in seclusion, and that Rizzo's complaint implicitly alleges a violation of that interest on behalf of Rizzo and the members of the proposed class, the question we must ask is whether the words in the "advertising injury" provision of the policies issued to Swiderski indicate that Swiderski and the insurers intended the policies to cover the type of injury to privacy that is the subject of Rizzo's TCPA fax-ad claim. Based on the plain, ordinary, and popular meaning of those words, we believe this type of injury falls potentially within the coverage of the policies' "advertising injury" provision.

The policies do not define the terms "publication," "material," or "right of privacy," which is why we must afford them their plain, ordinary, and popular meanings. *Outboard Marine*, 154 Ill. 2d at 115. To do so, we look to their dictionary definitions. See, *e.g.*, *Outboard Marine*, 154 Ill. 2d at 115-17; *Crum & Forster*, 156 Ill. 2d at 393.

Webster's Third New International Dictionary defines "publication" as "communication (as of news or information) to the public," and alternatively, as "the act or process of issuing copies *** for general distribution to the public." Webster's Third New International Dictionary 1836 (2002). Likewise, Black's Law Dictionary defines "publication" as "[g]enerally, the act of declaring or announcing to the public" and, alternatively, as "[t]he offering or distribution of copies of a work to the public." Black's Law Dictionary 1264 (8th ed. 2004).

The insurers have abandoned the argument they made before the appellate court that the conduct alleged in Rizzo's complaint did not constitute "publication." See 359 Ill. App. 3d at 885-86. However, in the interest of coherently interpreting all the relevant terms of the "advertising injury" provision, we observe that Rizzo's complaint alleges conduct by Swiderski that amounted to "publication" in the plain and ordinary sense of the word. By faxing advertisements to the proposed class of fax recipients as alleged in Rizzo's complaint, Swiderski published the advertisements both in the general sense of communicating information to the public and in the sense of distributing copies of the advertisements to the public.

-11-

The definition of "material" is "something (as data, observations, perceptions, ideas) that may through intellectual operation be synthesized or further elaborated or otherwise reworked into a more finished form or a new form or that may serve as the basis for arriving at fresh interpretations or judgments or conclusions." Webster's Third New International Dictionary 1392 (2002). This definition is quite broad and clearly encompasses advertisements, as the information contained in an advertisement is intended to serve as the basis for arriving at a judgment regarding the items advertised. Examining the definition of "material" in isolation, however, is unhelpful. We must consider the connotation of "material that violates a person's right of privacy."

Black's Law Dictionary defines "right of privacy" as "[t]he right to personal autonomy" and, alternatively, as "[t]he right of a person and the person's property to be free from unwarranted public scrutiny or exposure." Black's Law Dictionary 1350 (8th ed. 2004). The definition also refers the reader to the entry for "invasion of privacy," which is defined as "[a]n unjustified exploitation of one's personality or intrusion into one's personal activities" and includes "invasion of privacy by intrusion" and "invasion of privacy by disclosure of private facts." Black's Law Dictionary 843 (8th ed. 2004). The former is defined as "[a]n offensive, intentional interference with a person's seclusion or private affairs," and the latter as "[t]he public revelation of private information about another in an objectionable manner." Black's Law Dictionary 843 (8th ed. 2004). In addition, Webster's defines "privacy" as "the quality or state of being apart from the company or observation of others: seclusion." Webster's Third New International Dictionary 1804 (2004).

These definitions confirm that "right of privacy" connotes both an interest in seclusion and an interest in the secrecy of personal information. Accordingly, the policy language "material that violates a person's right of privacy" can reasonably be understood to refer to material that violates a person's seclusion. Unsolicited fax advertisements, the subject of a TCPA fax-ad claim, fall within this category.

Considering these definitions in conjunction with one another, we believe Rizzo's TCPA fax-ad claim potentially falls within the coverage of the policies' "advertising injury" provision. By faxing

advertisements to the proposed class of fax recipients as alleged in Rizzo's complaint, Swiderski engaged in the "written *** publication" of the advertisements. Furthermore, the "material" that Swiderski allegedly published, advertisements, qualifies as "material that violates a person's right of privacy," because, according to the complaint, the advertisements were sent without first obtaining the recipients' permission, and therefore violated their privacy interest in seclusion. The language of the "advertising injury" provision is sufficiently broad to encompass the conduct alleged in the complaint. To adopt the insurers' proposed interpretation of it–*i.e.*, that it is only applicable where the content of the published material reveals private information about a person that violates the person's right of privacy–would essentially require us to rewrite the phrase "material that violates a person's right of privacy" to read "material *the content of which* violates a person *other than the recipient's* right of privacy." This we will not do.

The insurers' argument, seconded by *amici*, that the context in which the clause "written *** publication *** of material that violates a person's right of privacy" appears should control our interpretation of it is similarly unavailing. As the insurers note, the Valley Forge policy's "advertising injury" provision encompasses injuries that arise out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; *** [t]he use of another's advertising idea in your 'advertisement'; [and] [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.' " The Continental policy contains similar language. However, just because these types of "advertising injury" appear to involve harm caused by the content of the advertisement involved does not compel us to conclude that injury that arises out of "written *** publication *** of material that violates a person's right of privacy" includes only injury that stems from the disclosure of private information. As mentioned, an insurance policy must be construed as a whole such that, if possible, every provision is given effect, because the operative assumption in interpreting a policy must be that every provision was intended to serve a purpose. *Central Illinois Light*, 213 Ill. 2d at 153. Interpreting the clause "written *** publication *** of material that violates a person's right of privacy" to encompass Rizzo's TCPA fax-

ad claim, as we have done above, does not, in any way, prevent the policies' alternative definitions of "advertising injury" from being given effect or thwart their respective purposes. Accordingly, we will not limit the clause's application based on a comparison of the surrounding clauses.

We note that it is difficult, due in part to the differences in the policy language at issue, to discern a clear majority approach in cases that have interpreted "advertising injury" provisions. Compare *Resource Bankshares*, 407 F.3d at 641 (insurer had no duty to defend under "advertising injury" provision that covered damages arising from "[m]aking known to any person or organization written or spoken material that violates a person's right to privacy"); *American States*, 392 F.3d at 943 (insurer had no duty to defend under "advertising injury" provision that covered injury arising out of "[o]ral or written publication of material that violates a person's right of privacy"); *New Century Mortgage Corp. v. Great Northern Insurance Co.*, No. 05 C 2370 (N.D. Ill. June 25, 2006) (unpublished opinion) (insured's action of sending unsolicited faxes in violation of TCPA did not constitute "advertising injury" under provision covering injury arising out of "oral or written publication of material that violates a person's right of privacy"); *American Home Assurance Co. v. McLeod USA, Inc.*, No. 05 C 5713 (N.D. Ill. June 5, 2006) (unpublished opinion) (insurer had no duty to defend under "advertising injury" provision that covered damages resulting from "oral or written publication of material that violates a person's right to privacy"); *Erie Insurance Exchange v. Watts*, No. 1:05–CV–867–JDT–TAB (S.D. Ind. May 30, 2006) (unpublished opinion) (insurer had no duty to defend under "advertising provision" that covered injury arising out of "oral or written publication of material that violates a person's right of privacy"); *Melrose Hotel*, 432 F. Supp. 2d at 503 (insurer had no duty to defend under "advertising injury" provision that covered "making known to any person or organization covered material that violates a person's right of privacy"); *St. Paul Fire & Marine Insurance Co. v. Brunswick Corp.*, 405 F. Supp. 2d 890, 895 (N.D. Ill. 2005) (insurer had no duty to defend under "advertising injury" provision that covered injury caused by "oral, written or electronic publication of material in your Advertisement that violates a person's right of privacy" (emphasis

omitted)), with *Park University*, 442 F.3d at 1251 (insurer had duty to defend under "advertising injury" provision that covered injury arising out of "[o]ral or written publication of material that violates a person's right of privacy"); *Hooters of Augusta, Inc. v. American Global Insurance Co.*, 157 Fed. Appx. 201, 208 (11th Cir. 2005) (unpublished opinion) (insured's action of sending unsolicited faxes in violation of TCPA constituted "advertising injury" under provision covering harm from "[o]ral or written publication of material that violates a person's right of privacy"), *aff'g* 272 F. Supp. 2d 1365 (S.D. Ga. 2003); *Western Rim Investment Advisors, Inc. v. Gulf Insurance Co.*, 96 Fed. Appx. 960 (5th Cir. 2004) (unpublished opinion), *aff'g* 269 F. Supp. 2d 836, 846-47 (N.D. Tex. 2003) (insurer had duty to defend under "advertising injury" provision that covered "[o]ral or written publication of material that a violates a person's right of privacy"); *Nutmeg Insurance Co. v. Employers Insurance Co. of Wasau*, No. Civ.A. 3:04–CV–1762B (N.D. Tex. August 24, 2006) (unpublished opinion) (insurer had duty to defend under "advertising injury" provision that covered injury arising out of "[o]ral or written publication of material that violates a person's right of privacy"); *Registry Dallas Associates, L.P. v. Wasau Business Insurance Co.*, No. Civ.A. 3:02–CV–2662L (N.D. Tex. February 26, 2004) (unpublished opinion) (insurer had duty to defend under "advertising injury" provision that covered injury arising out of "[o]ral or written publication of material that violates a person's right of privacy"); *Prime TV, LLC v. Travelers Insurance Co.*, 223 F. Supp. 2d 744, 752-53 (M.D.N.C. 2002) (insurer had duty to defend under "advertising injury" provision that covered "oral or written publication of material that violates a person's right of privacy"); *TIG Insurance Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232, 238-39 (Tex. App. 2004) (insured's action of sending unsolicited faxes in violation of TCPA constituted "advertising injury" under provision covering damages from "[o]ral or written publication of material that violates a person's right of privacy").

We observe, however, that our conclusion in this case that the insurers owe Swiderski a duty to defend pursuant to the policies' "advertising injury" provision is consistent with the conclusion reached by the majority of federal courts of appeals that have considered the applicability of "advertising injury" coverage to TCPA

fax-ad claims. Compare *Resource Bankshares*, 407 F.3d at 642 (fourth circuit); *American States*, 392 F.3d at 943 (seventh circuit), with *Park University*, 442 F.3d at 1251 (tenth circuit); *Hooters of Augusta*, 157 Fed. Appx. at 208 (eleventh circuit); *Western Rim*, 96 Fed. Appx. 960 (fifth circuit). See also *Universal Underwriters Insurance Co. v. Lou Fusz Auto Network*, 401 F.3d 876, 881, 883 (8th Cir. 2005) (insurer had duty to defend TCPA claim under policy that covered "private nuisance" and "invasion of rights of privacy"). In addition, our conclusion is consistent with that reached by the majority of courts that have examined policy language identical to the language at issue here. Compare *American States*, 392 F.3d at 943; *New Century Mortgage*, No. 05 C 2370 (N.D. Ill. June 25, 2006); *American Home Assurance*, No. 05 C 5713 (N.D. Ill. June 5, 2006); *Erie Insurance Exchange*, No. 1:05–CV–867–JDT–TAB (S.D. Ind. May 30, 2006), with *Park University*, 442 F.3d at 1251; *Hooters of Augusta*, 157 Fed. Appx. at 208; *Western Rim*, 96 Fed. Appx. 960; *Nutmeg Insurance*, No. Civ.A. 3:04–CV–1762B (N.D. Tex. August 24, 2006); *Registry Dallas Associates*, No. Civ.A. 3:02–CV–2662L (N.D. Tex. February 26, 2004); *Prime TV*, 223 F. Supp. 2d at 752-53; *TIG Insurance*, 129 S.W.3d at 238-39.

We are unpersuaded by the insurers' reliance on *American States*, 392 F.3d 939, *Resource Bankshares*, 407 F.3d 631, *Brunswick*, 405 F. Supp. 2d 890, *Melrose Hotel*, 432 F. Supp. 2d 488, and *Erie*, No. 1:05–CV–867–JDT–TAB. *American States* was the first federal appellate decision to address whether an "advertising injury" provision covered the sending of unsolicited fax advertisements. *American States*, 392 F.3d at 943. In *American States*, the insurance policy, like the policies at issue here, defined "advertising injury" to include "[o]ral or written publication of material that violates a person's right of privacy." *American States*, 392 F.3d at 940. The district court held that American States had a duty to defend its insured pursuant to the "advertising injury" provision, because an unsolicited fax invades the recipient's "privacy." *American States*, 392 F.3d at 940. On appeal, the Seventh Circuit reversed. *American States*, 392 F.3d at 943.

According to the court, the word "privacy" has many connotations, the two principal meanings being "secrecy and seclusion." *American States*, 392 F.3d at 941. The court criticized the district court for not recognizing the difference between secrecy and

seclusion and for not addressing which type of privacy interest the policy covered. *American States*, 392 F.3d at 942. Section 227 of the TCPA, the court explained, "doubtless promotes" a "slight" interest in seclusion, as "an unexpected fax, like a jangling telephone or a knock on the door, can disrupt a householder's peace and quiet, even though it is easy to throw a junk fax, like a piece of junk mail, in the trash without any risk that someone will observe activities that occur inside one's home." *American States*, 393 F.3d at 942. The court went on to clarify, however, that the relevant question in the case was whether the insurance policy covered the sort of seclusion interest affected by fax advertisements. *American States*, 393 F.3d at 942.

In answering this question in the negative, the court relied, in part, on the fact that the plaintiff in the underlying action was a corporation. *American States*, 393 F.3d at 942. According to the court, while businesses have interests protected by section 227 of the Act, those interests cannot accurately be called "privacy" interests, as businesses lack interests in seclusion. *American States*, 392 F.3d at 942. The court also relied on the policy's use of the word "publication." *American States*, 392 F.3d at 942. "Publication," the court reasoned, matters in a "secrecy situation" but is irrelevant in a "seclusion situation." *American States*, 392 F.3d at 942 ("A late-night knock on the door or other interruption can impinge on seclusion without any need for publication"). The court summarized this rationale by explaining that section 227 of the Act "condemns a particular means of communicating an advertisement, rather than the contents of that advertisement," while the "advertising injury" provision of the insurance policy, which referred to "publication," dealt with informational content. *American States*, 392 F.3d at 943.

The Fourth Circuit relied on *American States* in *Resource Bankshares*. There, the "advertising injury" provision at issue included coverage for damages arising from "[m]aking known to any person or organization written or spoken material that violates a person's right of privacy." *Resource Bankshares*, 407 F.3d at 634. The court acknowledged that "the harm occasioned by unsolicited faxes involves protection of some sort of 'privacy.'" *Resource Bankshares*, 407 F.3d at 639. Then, as in *American States*, the court defined the relevant question as "whether, when read *in context*, a reasonable purchaser of insurance would believe that the sort of privacy interests

-17-

protected by the policies overlap with the sort of privacy with which the TCPA is concerned." (Emphasis in original.) *Resource Bankshares*, 407 F.3d at 640.

Noting its approval of *American States*, the court held that the policies in question did "not cover the sorts of privacy invasions envisioned by the TCPA's unsolicited fax prohibition." *Resource Bankshares*, 407 F.3d at 640. *American States*, the court reasoned, "put words to the gut instinct" felt when comparing the complaint in the underlying action with the policies. *Resource Bankshares*, 407 F.3d at 641. According to the court, if the complaint alleged any violation of privacy, it was "seclusion" privacy, as the complaint was concerned with the manner of the insured's advertisement. *Resource Bankshares*, 407 F.3d at 641. In contrast, the court reasoned, the policies' "advertising injury" provision was "exclusively concerned with those types of privacy [citation] which, like secrecy, are implicated by *content* of the advertisements." (Emphasis in original.) *Resource Bankshares*, 407 F.3d at 641.

The court stated that "the plainest and most common reading of the phrase ['Making known to any person or organization written or spoken material that violates a person's right of privacy'] indicates that 'making known' implies telling, sharing, or otherwise divulging, such that the injured party is the one whose private material is *made known*, not the one *to whom* the material is made known." (Emphases in original.) *Resource Bankshares*, 407 F.3d at 641. The court also concluded that the context in which the clause at issue appeared supported this interpretation of it. *Resource Bankshares*, 407 F.3d at 641-42. Another clause of the "advertising injury" provision, the court pointed out, provided coverage for damages arising from "making known" disparaging material. *Resource Bankshares*, 407 F.3d at 641. According to the court, because it was difficult to imagine how "making known" disparaging material could harm the recipient of the material, it followed that both clauses containing "making known" focused on harm to third parties. *Resource Bankshares*, 407 F.3d at 641. The court added that, under this interpretation of the clause at issue, all four of the offenses set forth in the policies' "advertising injury" provision shared the common thread of assuming that the victim of the advertising injury was harmed by the sharing of the

content of the advertisement, not by the mere receipt of the advertisement. *Resource Bankshares*, 407 F.3d at 641-42.

*American States* and *Resource Bankshares* served as the basis for the three federal district court decisions on which the insurers rely, *Brunswick*, 405 F. Supp. 2d 890, *Melrose Hotel*, 432 F. Supp. 2d 488, and *Erie Insurance Exchange v. Watts*, No. 1:05–CV–867–JDT–TAB (S.D. Ind. May 30, 2006). The "advertising injury" provision at issue in *Brunswick* applied to injury caused by "oral, written or electronic publication of material in your Advertisement that violates a person's right of privacy." *Brunswick*, 405 F. Supp. 2d at 893. Relying on *American States*, the court held that this provision did not give rise to a duty to defend the insured from the TCPA claim brought against it. *Brunswick*, 405 F. Supp. 2d at 895 ("[T]his court concludes that on this point *American States* is the better reasoned opinion and more likely to be followed by the Illinois Supreme Court [than the appellate court's opinion in the instant case]").

In *Melrose Hotel*, the "advertising injury" provision in question defined "advertising injury offense" to include " 'making known to any person or organization covered material that violates a person's right to privacy.' " *Melrose Hotel*, 432 F. Supp. 2d at 496. There, the court held, based on *Resource Bankshares*, that the insurer had no duty to defend the insured pursuant to the "advertising injury" provision. *Melrose Hotel*, 432 F. Supp. 2d at 501-03 ("The Court finds persuasive the reasoning in *Resource Bankshares*, which examined language virtually identical to the Policy language").

Finally, in *Erie*, the "advertising injury" provision before the court applied to "injury arising out of oral or written publication of material that violates a person's right of privacy." *Erie*, slip op. at 5. Relying on *American States*, the court held that the insurer had no duty to defend the insured under the "advertising injury" provision. *Erie*, slip op. at 11-12 ("This court finds the analysis in the *American States* case to be on point in this case").

Of the cases discussed above, *Resource Bankshares*, *Brunswick*, and *Melrose Hotel* are distinguishable from the instant case in one particularly significant respect: they involved the interpretation of different policy language. As mentioned, the "advertising injury" provision at issue in *Resource Bankshares* covered damages arising from "*[m]aking known to any person or organization written or*

-19-

*spoken material* that violates a person's right of privacy." (Emphasis in original and omitted.) *Resource Bankshares*, 407 F.3d at 634. This wording seems to have been an important factor in the court's decision. See *Resource Bankshares*, 407 F.3d at 641-42. *Brunswick* dealt with an "advertising injury" provision applicable to injury caused by "oral, written or electronic *publication of material in your Advertisement* that violates a person's right of privacy." (Emphasis added.) *Brunswick*, 405 F. Supp. 2d at 893. Notably, while the court in *Brunswick* focused most of its analysis on the phrase "violates a person's right of privacy" (*Brunswick*, 405 F. Supp. 2d at 894-95), it ultimately observed that, as compared to the policies in this case and *American States*, the addition of the words "in your Advertisement" to the policy at issue "unambiguously demonstrate[d] that to be covered the injury must be a result of the content of the material" (*Brunswick*, 405 F. Supp. 2d at 895). Finally, in *Melrose Hotel*, the "advertising injury" provision covered " '*making known to any person or organization covered material* that violates a person's right to privacy.' " (Emphasis added.) *Melrose Hotel*, 432 F. Supp. 2d at 496. There, the court went so far as to note that courts that had found a duty to defend for TCPA violations under other "advertising injury" provisions had "considered broader language, which could arguably be read to include violations of the right to be left alone, the privacy right protected by the TCPA." *Melrose Hotel*, 432 F. Supp. 2d at 503. The "broader language" to which the court referred was identical to the language at issue here: " 'oral or written publication of material that violates a person's right of privacy.' " *Melrose Hotel*, 432 F. Supp. 2d at 503-04, quoting *Western Rim*, 269 F. Supp. 2d at 840.

This leaves the insurers with *American States* and *Erie*, which addressed policy language identical to the language at issue here. *American States*, 392 F.3d at 940; *Erie*, slip op. at 5. *Erie*, of course, relied on *American States*, which hinged considerably on the proposition that "publication" matters in a "secrecy situation," but not in a "seclusion situation." See *American States*, 392 F.3d at 942. This may very well hold true as a general matter in the realm of privacy law. We believe, however, that relying on this proposition as a basis for interpreting the insurance policy language "publication of material that violates a person's right of privacy" is inconsistent with this court's approach to interpreting insurance policy provisions.

-20-

Affording undefined policy terms their plain, ordinary, and popularly understood meanings is of central importance to this approach (see, *e.g.*, *Outboard Marine*, 154 Ill. 2d at 115; *Central Illinois Light*, 213 Ill. 2d at 155-56, 165), and doing so here yields the conclusion, as set forth above, that Rizzo's TCPA fax-ad claim potentially falls within the coverage of the policies' "advertising injury" provisions. Accordingly, we decline to follow *American States* and *Erie*.

V

Having determined that the allegations in Rizzo's complaint set forth facts that bring Rizzo's lawsuit potentially within the coverage of the policies' "advertising injury" provision, we need not consider whether the insurers have a duty to defend Swiderski pursuant to the policies "property damage" provision. See *United States Fidelity*, 144 Ill. 2d at 73 (where underlying complaint alleges several theories of recovery against insured, duty to defend arises even if only one such theory falls potentially within coverage of policy).

CONCLUSION

For the reasons expressed above, we hold that the insurers have a duty to defend Swiderski against Rizzo's lawsuit. Accordingly, we affirm the judgment of the appellate court, which upheld the circuit court's partial grant of summary judgment in favor of Swiderski.

*Affirmed*.