4 A.3d 999

MYRON CORPORATION, PLAINTIFF–RESPONDENT, v.
ATLANTIC MUTUAL INSURANCE CORPORATION,
DEFENDANT–APPELLANT.

Argued March 8, 2010—Decided July 27, 2010.

*Kevin E. Wolff* argued the cause for appellant (*Coughlin Duffy*, attorneys; *Mr. Wolff* and *Michael S. Chuven*, on the briefs).

*Dennis T. Smith* argued the cause for respondent (*Pashman Stein*, attorneys).

PER CURIAM.

The judgment is affirmed, substantially for the reasons expressed in Judge Reisner's opinion of the Appellate Division, reported at 407 *N.J.Super.* 302, 970 *A.*2d 1083 (2009).

Justice RIVERA–SOTO, dissenting.

Today, based on a New Jersey *Court Rule*, the majority authorizes an award of counsel fees incurred entirely in actions litigated outside of New Jersey. Because that represents an unwarranted and unwise extension of the fee-shifting *Rule*, I respectfully dissent.

I.

The facts in this case should govern its outcome. In June 2003, plaintiff Myron Corporation, a New Jersey-based commercial entity, was sued in Illinois state court by Stonecrafters, Inc. for sending "junk faxes" in violation of the Telephone Consumer Protection Act (TCPA), 47 *U.S.C.* § 227 (the "*Stonecrafters* action"). In October 2003, plaintiff placed its general liability insurance carrier, defendant Atlantic Mutual Insurance Corporation, on notice of the *Stonecrafters* action; defendant agreed to represent

plaintiff in that lawsuit under a reservation of rights that specifically reserved to defendant "the right to withdraw its defense at any time."

A year after it engaged in the representation of plaintiff in the *Stonecrafters* action, defendant filed a declaratory judgment action, also in Illinois but venued in its federal court, requesting that the court declare that the policy of insurance between plaintiff and defendant did not cover the claims alleged in the *Stonecrafters* action (the "First Illinois Federal Declaratory Judgment lawsuit"). Although that suit initially was dismissed for failure to meet the amount in controversy needed to invoke federal diversity jurisdiction, *see* 28 *U.S.C.* § 1332(a) (providing, in part, that United States District Courts "shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000"), defendant re-filed its complaint as soon as the aggregate of the defense costs it had incurred on plaintiff's behalf exceeded the amount in controversy threshold (the "Second Illinois Federal Declaratory Judgment lawsuit").

After the Second Illinois Federal Declaratory Judgment lawsuit was filed by defendant and served on plaintiff, plaintiff filed its own declaratory judgment complaint against defendant in Bergen County, New Jersey (the "First New Jersey Declaratory Judgment lawsuit"). Invoking the "first-filed" doctrine, defendant successfully moved to dismiss the First New Jersey Declaratory Judgment lawsuit. *See Sensient Colors, Inc. v. Allstate Ins. Co.*, 193 *N.J.* 373, 386, 939 *A.*2d 767 (2008) (explaining that, "[u]nder the first-filed rule, a New Jersey state court ordinarily will stay or dismiss a civil action in deference to an already pending, substantially similar lawsuit in another state, unless compelling reasons dictate that it retain jurisdiction" (citing *O'Loughlin v. O'Loughlin*, 6 *N.J.* 170, 179, 78 *A.*2d 64 (1951))).

Plaintiff then returned to Illinois and filed an abstention motion in the Second Illinois Federal Declaratory Judgment lawsuit. In response, the United States District Court for the Northern District of Illinois, in an unreported opinion, noted that

federal courts have the discretion to abstain, based on whether: (1) the question in the federal case is distinct from that in the state case; (2) the parties in both cases are identical; (3) the federal case will be useful or merely duplicative; and (4) declaratory judgment or other appropriate relief will be available if the federal case does not proceed. (citing *Nationwide Ins. v. Zavalis*, 52 *F*.3d 689, 692 (7th Cir.1995)).

It explained that "[t]his standard is less demanding and must be distinguished from the well-known *Colorado River* 'exceptional circumstances' test." (citing *Wilton v. Seven Falls Co.*, 515 *U.S.* 277, 115 *S.Ct.* 2137, 132 *L.Ed.*2d 214 (1995)). Applying that doctrine, the court "conclude[d] that abstention is warranted[.]" It held that the Second Illinois Federal Declaratory Judgment lawsuit "is hereby stayed and placed on the court's suspense docket in favor of the New Jersey state court case[,]" that is, the previously dismissed First New Jersey Declaratory Judgment lawsuit. Acknowledging that the First New Jersey Declaratory Judgment lawsuit in fact had been dismissed, the court further ordered that plaintiff "must seek to reopen the New Jersey state court case (or take whatever action it deems warranted in order to pursue its claims in New Jersey state court) within ten business days following the entry of this order." It warned that "[i]f it does not do so, the court will revisit this decision taking that failure into account."

Plaintiff returned to Bergen County and refiled its earlier dismissed action (the "Second New Jersey Declaratory Judgment lawsuit"). Plaintiff was successful; in an unreported opinion, the trial court properly differentiated between an insurer's duty to defend and duty of indemnity, *see generally Flomerfelt v. Cardiello*, 202 *N.J.* 432, 444, 997 *A*.2d 991 (2010) (exploring differences between insurer's duty to defend insured and insurer's duty to indemnify insured, and explaining that "[t]hose duties are neither identical nor coextensive"). Based on those differing duties, the trial court held that plaintiff was "entitled to a policy-based defense and reimbursement for past reasonable litigation expenses that are related to the *Stonecrafters* action[,]" while noting that "[t]he question of whether [plaintiff] is entitled to be actually

indemnified for losses imposed upon it in the *Stonecrafters* litigation remains to be determined after a plenary trial."

In the end, plaintiff and defendant settled all the disputes between them save for plaintiff's claim for nearly $160,000 in counsel fees purportedly incurred in defending the First Illinois Federal Declaratory Judgment lawsuit and the Second Illinois Federal Declaratory Judgment lawsuit.[1]  On plaintiff's application invoking *Rule* 4:42–9(a)(6), the trial court noted that the lone issue was the "legal fees incurred by the plaintiff here when it was a defendant in the two federal district court cases in Illinois." Explaining that "it is those legal fees that the plaintiff here seeks to have reallocated from the defendant[,]" the trial court remarked that plaintiff's "theory [was] that … all of these actions essentially are a single action upon a liability or indemnity policy of insurance that [plaintiff] is the successful claimant and is entitled to recover all of its fees wherever they were [incurred] as part of this virtual unitary action."

The trial court rejected that theory.  It noted that "both sides were extremely interested for tactical if not strategic reasons in having their cases in different jurisdictions because of … the probable difference in outcome determination."  It explained that, "given the jurisprudence that existed in Illinois[,][2] albeit not

---

[1] Although the record lacks a clearly defined and detailed affidavit of services as required by *Rule* 4:42–9(b), the description of professional steps taken in plaintiff's defense of the First Illinois Federal Declaratory Judgment lawsuit and the Second Illinois Federal Declaratory Judgment lawsuit hardly seem to warrant the large quantity of legal fees sought.

[2] Under Illinois law as of the time the *Stonecrafters* action was filed, the claim pressed against plaintiff in that case alleging violations of the TCPA was not covered by the general liability policy issued by defendant.  *See Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 *F.*3d 939 (7th Cir.2004) (interpreting Illinois state law).  In 2006, the Illinois Supreme Court rejected that analysis and conclusion, holding instead that allegations of violations of the TCPA potentially fall within a general liability insurance policy's "advertising injury" provisions.  *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 *Ill.*2d 352, 307 *Ill.Dec.* 653, 860 *N.E.*2d 307 (2006).  Thus, since *Valley Forge*, there would

under the lens of New Jersey law[,] that the defendant here probably would have won there, at least that was the likely view." Observing that Illinois—unlike New Jersey—would not award counsel fees in an insurance coverage dispute, the trial court reasoned that "[t]he question is whether the plaintiff is entitled [to counsel fees] where it probably would not have been entitled to a change in the American rule in Illinois to counsel fees[.]" The trial court sensibly concluded that "it goes too far to interpret the Supreme Court's intent in enacting *Rule* 4:42–9(a)(6) that it would apply to litigational expenses generated outside of this territory."

That, in a nutshell, is the issue presented here: can a New Jersey *Rule of Court—Rule* 4:42–9(a)(6)—apply to shift counsel fees in actions properly brought in another jurisdiction? Common sense, long-standing precedent, and basic principles of comity require that the answer be a resounding "no."

## II.

Any analysis of counsel fee shifting "must start from the proposition that 'New Jersey has a strong public policy against the shifting of costs' and that '[t]his Court has embraced that policy by adopting the "American Rule," which prohibits recovery of counsel fees by the prevailing party against the losing party.'" *In re Estate of Vayda,* 184 *N.J.* 115, 120, 875 *A.*2d 925 (2005) (quoting *In re Niles,* 176 *N.J.* 282, 293–94, 823 *A.*2d 1 (2003)); *see also Mason v. City of Hoboken,* 196 *N.J.* 51, 70, 951 *A.*2d 1017 (2008) ("New Jersey generally follows the 'American Rule,' under which a prevailing party cannot recover attorney's fees from the loser." (citing *Rendine v. Pantzer,* 141 *N.J.* 292, 322, 661 *A.*2d 1202 (1995))). This Court repeatedly has emphasized that "'[t]he purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not

have been no difference in the outcome of the coverage dispute between plaintiff or defendant regardless of whether the declaratory judgment action was venued in Illinois or New Jersey.

penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience.'" *Ibid.* (quoting *In re Niles, supra,* 176 *N.J.* at 294, 823 *A.*2d 1); *see also In re Estate of Stockdale,* 196 *N.J.* 275, 307, 953 *A.*2d 454 (2008) ("'This Court has embraced that policy [against shifting counsel fees from one party to another] by adopting the "American Rule," which prohibits recovery of counsel fees by the prevailing party against the losing party.'" (quoting *In re Niles, supra,* 176 *N.J.* at 294, 823 *A.*2d 1)).

That said, as a limited exception to the "American Rule" recognized in New Jersey, "*Rule* 4:42–9 codifies those specific instances where, in the absence of a separately enabling statute or contract, fee shifting is permitted." *In re Vayda, supra,* 184 *N.J.* at 120, 875 *A.*2d 925. Specifically, *Rule* 4:42–9(a)(6) provides that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except ... [i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant[.]" The *Rule* is intended "to permit an award of counsel fees only where an insurer refuses to indemnify or defend in respect of its insured's third-party liability to another[.]" Pressler, *Current N.J. Court Rules,* Comment 2.6 to *R.* 4:43–9. Focusing, therefore, on *Rule* 4:42–9(a)(6) as the basis for plaintiff's demand for relief, it is crucial to recognize that "[c]ourt rules regulating attorney fees are not only clearly procedural but have also expressly been so declared." *Du–Wel Products, Inc. v. U.S. Fire Ins. Co.,* 236 *N.J.Super.* 349, 362, 565 *A.*2d 1113 (App.Div.1989), *certif. denied,* 121 *N.J.* 617, 583 *A.*2d 316 (1990) (citing *Busik v. Levine,* 63 *N.J.* 351, 372–73, 307 *A.*2d 571 (1973)).

Properly drawn, then, the question presented in this appeal is whether a New Jersey procedural rule has extra-territorial application so as to permit counsel fee-shifting for fees incurred in an action brought, prosecuted and defended in another state. In the context of New Jersey precedent—which embraces the "American Rule" with sparse, enumerated exceptions—that inquiry must be

exceedingly narrow. It is to the exception itself that one must turn.

### III.

At the outset, the fee-shifting provisions of *Rule* 4:42–9(a)(6), by their own terms, are not triggered unless plaintiff is the "successful claimant" in the declaratory judgment action on the insurance policy. *See, e.g., N.J. Mfrs. Ins. Co. v. Consol. Mut. Ins. Co.*, 124 *N.J.Super.* 598, 308 *A.*2d 76 (Law Div.1973) (allowing counsel fees in insurance coverage declaratory judgment action). Yet, here, plaintiff was *not* the "successful claimant" in either the First Illinois Federal Declaratory Judgment lawsuit or the Second Illinois Federal Declaratory Judgment lawsuit; the former was temporarily dismissed for want of the jurisdictional amount required and, as the Illinois federal court explicitly ruled, the latter was simply "stayed and placed on the court's suspense docket in favor of the New Jersey state court case." Neither of those events constituted an adjudication on the merits. Thus, from a purely technical point of view, even assuming *Rule* 4:42–9(a)(6)—a New Jersey rule of *procedure*—could be exported to apply to actions brought and litigated in Illinois, plaintiff still does not qualify as a "successful claimant," as specifically required by the *Rule,* and therefore is not entitled to an award of counsel fees incurred in defending either or both of the Illinois actions.

That conclusion, however, begs the more immediate question: whether *Rule* 4:42–9(a)(6) should be given extraterritorial effect. As noted, the *Rule* is one of procedure, not substance, and, for purely practical and common sense reasons, its reach should not exceed New Jersey's boundaries. If, as the majority allows, a plaintiff in New Jersey can seek counsel fees on a properly brought action in another state, what will keep a plaintiff, any plaintiff, from litigating its insurance coverage questions elsewhere and, once successful, then coming to New Jersey to take advantage of this specific fee-shifting rule? Yet, that is the very result the majority's affirmance produces. It is instructive to

remember that, although plaintiff is located in New Jersey, the *Stonecrafters* action—the suit that initially triggered the insurance coverage question—was venued in the Illinois state courts and plaintiff *never* claimed that the Illinois state courts lacked either subject matter or personal jurisdiction over plaintiff. Given that the gist of the case already was in Illinois, the then-state of the law in Illinois favored the position advanced by defendant, and plaintiff never claimed that any of the Illinois courts lacked jurisdiction over this controversy or the parties thereto, it simply stands to reason that defendant would file its declaratory judgment action in Illinois. Also, it is most telling that plaintiff never sought to dismiss either the First Illinois Federal Declaratory Judgment lawsuit or the Second Illinois Federal Declaratory Judgment lawsuit for want of subject matter jurisdiction, want of personal jurisdiction or improper venue. Those actions add up to plaintiff's clear admission that the lawsuits were properly pled before the Illinois courts, either state or federal.

It is also worthwhile to emphasize that plaintiff's application to the Illinois federal court invoked the discretionary doctrine of abstention, that is, plaintiff acknowledged that the Illinois federal court could rule substantively on the case before it but requested that the Illinois federal court exercise its discretion and stay its hand to allow the matter to be litigated elsewhere.

In the aggregate, those considerations command that this Court too stay its hand. We do well to remember that "interstate comity seeks to further harmonious relations between the states and to facilitate commercial intercourse between them." *P.V. ex rel. T.V. v. Camp Jaycee*, 197 *N.J.* 132, 152, 962 *A.*2d 453 (2008) (citation and internal quotation marks omitted). The result commanded by the majority in this case—where our procedural rules are being applied to actions litigated elsewhere—does needless violence to the vital concept of comity among states.

## IV.

In the final analysis, the right conclusion is inescapable: the trial court was correct. It noted that plaintiff's counsel fee

application for the fees it incurred defending the declaratory judgment actions in the Illinois federal court "is not supported by *Rule* 4:42–9(a)(6) because the fees that are sought were not created, generated or incurred or earned in an action upon a liability or indemnity policy of insurance in favor of a successful claimant. They were earned in a different action[.]" That reasoning and its resulting conclusion plainly are unassailable. Because the majority rejects them, I respectfully dissent.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For reversal*—Justice RIVERA-SOTO—1.