COLLOTON, Circuit Judge,
dissenting.
The insurance policy language at issue in this case has been the subject of judicial decisions under the law of several jurisdictions, and it has divided the courts. In my *823 view, the better reasoned decisions, and those most likely to be followed by the Supreme Court of Minnesota, are those holding that there is no coverage for claims alleging a violation of the Telephone Consumer Protection Act (“TCPA”), 47 U.S.C. § 227(b)(1)(C). I would therefore reverse the judgment of the district court and remand for further proceedings.
Owners Insurance Company and Auto-Owners Insurance Company issued insurance policies to European Auto Works, Inc., d/b/a Autopia. The policies state that the insurers will pay damages that the insured is obligated to pay because of “advertising injury.” The definitions of “advertising injury” in the policies are essentially the same. In the commercial general liability policy issued by Owners Insurance, the term is defined as follows, with emphasis added:
“Advertising injury” means injury arising out of one or more of the following offenses:
a. Oral or written publication of material that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services.
b. Oral or written publication of material that violates a person’s right of privacy.
c. Misappropriation of advertising ideas or style of doing business; or
d. Infringement of copyright, title or slogan.[4]
Autopia and Percic Enterprises, a recipient of Autopia’s facsimiles, seek to establish that the insurance policies cover damages that Autopia must pay to Percic for sending unsolicited facsimiles in violation of the TCPA. They argue that the damages are due to “advertising injury,” because they arise out of an “oral or written publication of material that violates a person’s right of privacy.” On that view, the facsimiles violated Percic’s interest in avoiding intrusions on seclusion, which is one species of a right of privacy.
The italicized subsection (b), however, must be viewed in context. Minnesota law is firm on this point: “Although we begin with the plain and ordinary meaning of the terms, the terms of a contract must be read in the context of the entire contract.” Quade v. Secura Ins., 814 N.W.2d 703, 705 (Minn.2012) (internal quotation omitted). The Minnesota courts will not consider the meaning of subsection (b) in isolation, but in the light of surrounding provisions.
The context shows that the definition of advertising injury “focuses on the content of an advertisement rather than harm arising from mere receipt of an advertisement.” Auto-Owners Ins. Co. v. Websolv Computing, Inc., 580 F.3d 543, 551 (7th Cir.2009). Subsections (a), (c), and (d) all depend on an examination of the content of the advertisement to determine whether the content caused harm. Subjection (a) even begins with precisely the same phrase as does subsection (b) — “Oral or written publication of material” — which in subsection (a) means that the offender has publicized material that damages the targeted person. Rather than assume that the parties gave the same phrase different meanings in adjacent subsections of the same policy, we should read subsection (b) likewise to refer to an act of publicizing material, the content of which causes injury. That has been the conclusion of courts applying the law of three different jurisdic *824 tions, all of which give words in a policy their ordinary meaning and construe ambiguities against an insurer. See Websolv, 580 F.Bd at 551 (“The surrounding provisions ... require the examination of the content of the offending advertisement. It is therefore reasonable to infer that subsection (b) also concerns harm emanating from the content of an advertisement.”) (applying Iowa law); State Farm Gen. Ins. Co. v. JT’s Frames, Inc., 181 Cal.App.4th 429, 104 Cal.Rptr.3d 573, 587 (2010) (“The provision at issue falls in the middle of four definitions of ‘advertising injury’.... Viewed in this context, [the definition] may most reasonably be interpreted as referring to advertising material whose content violates a person’s right of privacy.”); Telecomm. Network Design v. Brethren Mut. Ins. Co., 5 A.3d 331, 337 (Pa.Super.Ct.2010) (“When the term is read within the context of the policies, it is clear ... that the term ‘privacy’ is confined to secrecy interests.... [The] offenses refer to the content of the material covered by the policies.”). The suggestion here is not that the Supreme Court of Minnesota would “deviate from its general rule of interpreting ambiguous provisions in favor of the insured,” ante, at 822, but that the Minnesota court would follow its general rule of reading a clause in the context of the policy as a whole before determining whether it is ambiguous. Quade, 814 N.W.2d at 706.
A number of decisions from other jurisdictions that find coverage for damages arising from unsolicited facsimiles seem to construe the subsection in isolation without discussing the surrounding provisions. One exception, cited by the court, is Valley Forge Ins. Co. v. Swiderski Elecs., Inc., 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307 (2006). In rejecting the insurer’s argument, the Supreme Court of Illinois reasoned that reading subsection (b) broadly to encompass unsolicited facsimiles would “not, in any way, prevent” the other subsections “from being given effect or thwart their respective purposes.” Id., 307 Ill. Dec. 653, 860 N.E.2d at 318. That observation is true, but irrelevant under Minnesota law. Of course, construing subsection (b) out of context would not leave subsections (a), (c), and (d) without effect. But the point of reading subsection (b) in context is that the other subsections give meaning to subsection (b) and show that it is concerned with harm arising from the content of advertising material. Subsection (b) “must be construed within the context of the [provision] as a whole and cannot be artificially separated from the other language.” Henning Nelson Constr. Co. v. Fireman’s Fund Am. Life Ins. Co., 383 N.W.2d 645, 653 (Minn.1986).
The transmission of an unsolicited facsimile does not publish material that violates a person’s right to privacy in the sense relevant to these insurance policies. An unwanted advertisement does not publicize information about the recipient that the recipient wants to keep private. The policies thus do not provide coverage for the damages incurred by Autopia as a result of its violations of the TCPA.
For these reasons, I would reverse the judgment of the district court and remand for further proceedings.

. The relevant text of a commercial umbrella policy issued by Auto-Owners Insurance is identical, except that the opening clause qualifies "following offenses” with "committed in the course of advertising your goods, products or services.”