17 A.3d 239 (2011)
419 N.J. Super. 386
CHASE BANK USA, N.A., Plaintiff-Respondent,
v.
Jennifer STAFFENBERG, Defendant-Appellant.
No. A-4488-09T3.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 2010.
Decided April 11, 2011.
*240 Lewis G. Adler argued the cause for appellant.
Mark B. Blocker (Sidley Austin LLP) of the Illinois bar, admitted pro hac vice, argued the cause for respondent (JPMorgan Chase Legal Department, and Mr. Blocker, attorneys; Brad D. Layton and Mr. Blocker, on the brief).
Before Judges LISA, SABATINO, and ALVAREZ.
The opinion of the court was delivered by
SABATINO, J.A.D.
Defendant, a debtor with a delinquent credit card account, challenges the Special Civil Part's inclusion of $133.14 in counsel fees as part of a default judgment entered against her in favor of the credit card company. The counsel fees were awarded as taxed costs to the creditor pursuant to N.J.S.A. 22A:2-42. The debtor argues that such counsel fees were not recoverable in this case because the legal services for the creditor were performed by its in-house attorneys. In support of her argument, the debtor invokes two other statutes, N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d), which preclude the recovery of counsel fees in certain contexts where the creditor was represented by in-house counsel. The debtor argues that these two provisions in Title 17 restrict the counsel fees ordinarily recoverable in the Special Civil Part as taxed costs under N.J.S.A. 22A:2-42.
The trial court rejected the debtor's statutory interpretation, and consequently denied her motion to vacate the final judgment's inclusion of counsel fees. For the reasons that follow in this opinion, we affirm.

I.
The pertinent facts are uncomplicated and essentially undisputed.
Chase Bank USA, N.A. ("plaintiff" or "Chase"), is a national banking corporation with offices in Delaware. Defendant Jennifer Staffenberg, a resident of New Jersey, is the holder of a credit card issued by plaintiff or one of its affiliate Chase companies.
In October 2009, plaintiff filed a one-count complaint in the Special Civil Part against defendant. The complaint alleged that defendant was indebted on her Chase credit card resulting from purchases of goods and services at various retail stores, and/or for cash advances that she received. The complaint sought recovery of a balance then due in the sum of $5,868.98, inclusive of service charges, interest, and costs charged under defendant's cardholder *241 agreement.[1] Attached to the complaint was a summary of defendant's credit card account, corroborating the amounts due. The complaint alleged that defendant had failed to pay those sums, despite plaintiff's demand for such payment. Consequently, the complaint sought judgment in the sum of $5,868.98, "together with lawful interest, attorney['s] fees, and costs of suit."
The summons and complaint each listed as plaintiff's counsel of record two attorneys in the JPMorgan Chase Legal Department[2] in Woodbridge. It is undisputed that these two lawyers, both members of the New Jersey bar, are employed as salaried, in-house counsel by Chase or its affiliates. It is also undisputed that Chase did not retain outside counsel to represent its interests in the prosecution of this collection action in the Special Civil Part.[3]
Defendant did not respond to the complaint. Consequently, a default was automatically entered against her by the Special Civil Part pursuant to Rule 6:6-2.
On November 30, 2009, plaintiff submitted to the Special Civil Part a certification of proof and non-military service in support of its application for judgment by default. The certification was signed by an assistant treasurer of Chase Bankcard LLC, which we presume is another affiliated Chase entity. The certification confirmed that the balance then due from defendant was $5,868.98, together with $37.95 in interest, pursuant to Rule 4:42-11(a), calculated from October 2, 2009 through November 30, 2009, for a combined total of $5,906.93.
In addition, plaintiff sought $133.14 in counsel fees, a sum computed in accordance with the formula set forth in N.J.S.A. 22A:2-42. The first paragraph of N.J.S.A. 22A:2-42 authorizes a five percent award of counsel fees for the first $500.00 of a judgment procured in the Special Civil Part, and two percent on sums exceeding that amount.
The full text of N.J.S.A. 22A:2-42 reads:
There shall be taxed by the clerk of the Superior Court, Law Division, Special Civil Part in the costs against the judgment debtor, a fee to the attorney of the prevailing party, of five per centum (5%) of the first five hundred dollars ($500.00) of the judgment, and two per centum (2%) of any excess thereof.
In actions of replevin the court shall allow the attorney of the prevailing party a fee of not less than five dollars ($5.00) nor more than ten dollars ($10.00), to be taxed and collected as aforesaid.
Upon entry of any order adjudging a person in contempt for violation of any order of the court or upon any motion or application to the court made subsequent to the commencement of an action or proceeding in the Special Civil Part, the court, in its discretion, may award an attorney or counsel fee of not more than ten dollars ($10.00) to be paid in such manner as the court shall direct.
[Emphasis added.]
Applying this formula, the applicable counsel fees were calculated at $133.14, consisting of a $25.00 portion (equaling five percent on the first $500.00 due) plus an *242 additional portion of $108.14 (comprising two percent of the $5,406.93 remainder).
Plaintiff also sought court costs in the sum of $57.00. This consisted of the $50.00 fee for filing a complaint in the Special Civil Part exceeding the $3,000 limit of the Small Claims Section, see N.J.S.A. 22A:2-37.1a(3)(a); R. 6:1-1(c), plus a $7.00 fee for the service upon defendant by mail, see N.J.S.A. 22A:2-37.1a(5); R. 6:2-3(d)(3).[4]
On December 7, 2009, the clerk of the Special Civil Part in Camden County entered a default judgment against defendant in the total amount of $6,097.07, comprised of the aforesaid $5,906.93 debt and accrued interest, plus $57.00 in court costs for the complaint and mail service, plus $133.14 in counsel fees. Plaintiff was listed on the judgment as the creditor, and the judgment was addressed to Chase's in-house legal department.
Meanwhile, an attorney retained by defendant wrote letters to plaintiff, urging that it cease and desist its collection activities because defendant was contemplating the filing of a bankruptcy petition. However, defendant apparently did not file such a petition. Defendant's bank account was subsequently levied in the amount of $1,502.42, in partial satisfaction of the judgment.
On March 18, 2010, three months after the default judgment was entered, defendant filed a motion for relief pursuant to Rule 4:50-1(f). In her certification in support of that motion, defendant asserted that she had a meritorious defense to plaintiff's claims, stating that there were "amounts alleged in the complaint for damages which [she] neither caused or was responsible for."[5] In addition, and more significantly for this appeal, defendant asserted that Chase had illegally charged her counsel fees because such fees are not, in her view, statutorily recoverable when the legal services to the creditors are provided by salaried, in-house attorneys of a bank or credit card company.
Defendant enclosed with her moving papers a proposed answer and counterclaim. The proposed counterclaim asserted that Chase is precluded under both N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d) from recovering counsel fees, unless the account receivable has been referred for collection to an attorney who is not a salaried employee of the creditor or lender. The counterclaim further alleged that Chase's demand for such counsel fees was defective, and in violation of the Truth-In-Consumer Contracts, Warranty and Notice Act, N.J.S.A. 56:12-14. Defendant also claimed that the counsel fee demand constituted a per se violation of the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -195.
Defendant sought to litigate her proposed counterclaim as a class action under Rule 4:32, on behalf of: (1) individuals who have had debts held or serviced by Chase in New Jersey for six years prior to the complaint and through the date of class certification, and (2) individuals who received a demand for payment of attorney's fees in matters handled by Chase's in-house counsel. She also sought to have the case transferred from the Special Civil Part to the Civil Part of the Law Division.
In its papers opposing defendant's Rule 4:50-1 motion, plaintiff noted that defendant had not filed a bankruptcy petition *243 and that its ongoing collection activities were therefore permissible. Plaintiff also furnished the trial court with a more detailed billing history of defendant's delinquent credit card account.
As to the central issue now on appeal concerning the taxed costs of $133.14 in counsel fees, plaintiff asserted that it had not sought what it described as "contractual" fees under either N.J.S.A. 17:3B-40 or N.J.S.A. 17:16C-42(d), but instead had sought only the "statutory" counsel fees authorized under N.J.S.A. 22A:2-42. Plaintiff argued that, unlike the two provisions in Title 17 invoked by defendant, N.J.S.A. 22A:2-42 does not restrict the recovery of counsel fees to situations in which the creditor is represented by in-house counsel.
After hearing oral argument, the trial court denied defendant's motion for relief under Rule 4:50-1. In his oral ruling, the judge first observed that defendant's assertion of a meritorious defense of the collection action was conclusory, and insufficient to set aside the judgment under Rule 4:50-1.[6]
The judge then rejected defendant's claim that the award of counsel fees to plaintiff under N.J.S.A. 22A:2-42 was improper. The judge recognized that if plaintiff had sought fees pursuant to the terms of the cardholder agreement, it could not recover such fees, unless it were represented by outside counsel. The judge distinguished such contractual fees from the limited statutory fees that are recoverable under N.J.S.A. 22A:2-42, fees which the judge characterized, by comparison, as "nominal."
The judge read the counsel fee provision in N.J.S.A. 22A:2-42 as mandatory, finding that he lacked the discretion to withhold them. As he described it, the counsel fees awarded under N.J.S.A. 22A:2-42 comprise "a statutory tax done by a [legislative] mandate." Consequently, defendant's attempt to vacate those fees from the judgment was rejected.
In her present appeal, defendant maintains that the judge misconstrued and misapplied the pertinent statutes. In particular, she argues that the prohibitions upon the recovery of counsel fees in N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d), when collection is pursued by an in-house attorney, trump such a creditor's ability to recover counsel fees under N.J.S.A. 22A:2-42. She maintains that there is no reason to recognize a distinction between "contractual" and "statutory" counsel fees. Instead, she asserts that the restrictions on fees set forth in N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d) instead apply to all counsel fees sought by lenders and credit card companies. She further argues that the judge erred in treating an award of counsel fees under N.J.S.A. 22A:2-42 as mandatory. By way of relief, defendant urges that we adopt her reading of the statutes, vacate the default judgment, and allow her to proceed in the Law Division with her counterclaim and proposed class action.
Consistent with its legal position in the trial court, plaintiff opposes defendant's construction of the cited statutes. Apart from that substantive opposition, plaintiff provisionally requests that, if we disagree with the trial court's reading of N.J.S.A. 22A:2-42 and conclude that counsel fees under that statute are, in fact, not recoverable for the services of in-house counsel, we make that ruling prospective only. Plaintiff contends that a retroactive ruling that adopts defendant's reading of the statutes would disrupt long-settled customs and practices, and would have an *244 abrupt and negative impact on credit card collections.
We now examine these contentions.

II.

A.
Our task is to interpret the meaning of the various statutes placed before us concerning counsel fees. In doing so, we abide by fundamental principles of statutory construction.
"When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent." State v. Shelley, 205 N.J. 320, 323, 15 A.3d 818 (2011) (citing DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)); see also Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553, 964 A.2d 741 (2009). "In furtherance of that goal, we begin each such inquiry with the language of the statute, giving the terms used therein their ordinary and accepted meaning." Shelley, supra, 205 N.J. at 323, 15 A.3d 818. We strive to give effect to every word of a statute, to not assume that the Legislature used meaningless language, and, lastly, to avoid an interpretation that would render part of it superfluous. Med. Soc. of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 26-27, 575 A.2d 1348 (1990); see also Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 521, 472 A.2d 517 (1984).
"When the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." Shelley, supra, 205 N.J. at 323, 15 A.3d 818 (citing State v. D.A., 191 N.J. 158, 164, 923 A.2d 217 (2007)). "We seek out extrinsic evidence, such as legislative history, for assistance when statutory language yields `more than one plausible interpretation.'" Shelley, supra, 205 N.J. at 323-24, 15 A.3d 818 (quoting DiProspero, supra, 183 N.J. at 492-93, 874 A.2d 1039). "[I]f the language is not plain, if the Legislature's intent is not clear, or if the words are `susceptible to more than one possible meaning or interpretation, courts may look to extrinsic secondary sources' to assist us." Hubner v. Spring Valley Equestrian Ctr., 203 N.J. 184, 194, 1 A.3d 618 (2010) (quoting Marino v. Marino, 200 N.J. 315, 329, 981 A.2d 855 (2009)). Such extrinsic aids may include, for example, legislative history, press releases, and sponsor statements. Hubner, supra, 203 N.J. at 194, 1 A.3d 618 (citations omitted).
Long-standing custom in how a statute has been interpreted and applied may also be relevant as an extrinsic aid, to the extent that the Legislature has not amended the law to interfere with such traditional practices. "The principle is well established that resort may be had to long usage, contemporaneous construction and practical interpretation in construing statutes, to ascertain the meaning of technical terms, to confirm a construction deduced from the language, to explain a doubtful phrase or to ascertain the meaning of a phrase if obscurely expressed." Pringle v. N.J. Dep't of Civil Serv., 45 N.J. 329, 332-33, 212, A.2d 360 (1965). "`Like all precedents, where contemporaneous and practical interpretation has stood unchallenged for a considerable length of time it will be regarded as of great importance in arriving at the proper construction of a statute.'" N.J. Ass'n on Corr. v. Lan, 80 N.J. 199, 215, 403 A.2d 437 (1979) (quoting 2A Sutherland, Statutes & Statutory Constr. § 49.07, 251-52 (4th ed. 1973)).
Such customary application and practice is particularly relevant when it reflects how courts traditionally have applied a statute. Although it is not by any means dispositive, "[t]he construction of a statute by the courts, supported by long acquiescence on the part of the Legislature, or by *245 continued use of the same language or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent." Lemke v. Bailey, 41 N.J. 295, 301, 196 A.2d 523 (1963); see also Green v. Jersey City Bd. of Educ., 177 N.J. 434, 445, 828 A.2d 883, (2003).
The present case involves the interpretation of multiple statutes that arguably overlap with one another. In such instances, courts "must seek to harmonize what appear to be superficially disparate statutory provisions." In re Expungement Petition of D.H., 204 N.J. 7, 24, 6 A.3d 421 (2010). "[W]hen construction involves the interplay of two or more statutes, we seek to harmonize the two, under the assumption that the Legislature was aware of its actions and intended for cognate provisions to work together." State ex rel. J.S., 202 N.J. 465, 480, 998 A.2d 409 (2010). In "interpreting different statutory provisions, we are obligated to make every effort to harmonize them[.]" In re Gray-Sadler, 164 N.J. 468, 485, 753 A.2d 1101 (2000); see also Jacobs v. N.J. State Highway Auth., 54 N.J. 393, 401, 255 A.2d 266 (1969) (instructing that cognate laws are to be viewed with a presumption that they were "intended to become part of a consistent whole unless they or parts of them are expressly or impliedly incompatible").
Lastly, we recognize that our appellate review of the trial court's interpretation of the pertinent statutes is de novo, for such a judicial determination concerns questions of law. Real v. Radir Wheels, Inc., 198 N.J. 511, 524, 969 A.2d 1069 (2009); Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549, 803 A.2d 53 (2002). The facts in this case are essentially undisputed and the issues before us are purely legal in character. See Zabilowicz v. Kelsey, 200 N.J. 507, 512-13, 984 A.2d 872 (2009); see also Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) (mandating de novo review of rulings on questions of law).
We now apply these well-established principles of statutory construction and judicial review to the present case.

B.
We first examine N.J.S.A. 22A:2-42, the statute that triggered the $133.14 in counsel fees awarded here as taxed costs. As we have already noted, the first paragraph of N.J.S.A. 22A:2-42 states that there "shall be taxed by the clerk . . . in the costs against the judgment debtor, a fee to the attorney of the prevailing party[.]"
We agree with the motion judge that the inclusion of such fees as taxed costs of suit is mandatory under N.J.S.A. 22A:2-42. "The use of the word `shall' ordinarily denotes action that is mandatory, unless the context suggests otherwise." Quereshi v. Cintas Corp., 413 N.J.Super. 492, 498, 996 A.2d 465 (App.Div. 2010). The modest amount of the fee under N.J.S.A. 22A:2-42 (five percent of the first $500 recovered and two percent of any excess) is fixed as a percentage of the judgment. That fee manifestly is not designed to reflect the actual time and skill expended by the judgment creditor's attorney. Nor does it necessarily reflect a reasonable sum of fees. Instead, the award of modest counsel fees as taxed costs under N.J.S.A. 22A:2-42 generally operates to shift to the judgment debtor only a portion of the actual costs incurred by the creditor's attorney in litigating the action. See Bancredit, Inc. v. Bethea, 65 N.J.Super. 538, 552, 168 A.2d 250 (App. Div.1961). Indeed, we presume that in many cases within the $15,000 jurisdictional limit of the Special Civil Part, the counsel fees awarded as taxed costs pursuant to the five percent/two percent formula in N.J.S.A. 22A:2-42 will be exceeded by the actual market value of the attorney services *246 reasonably expended on the matter through the time of the entry of the judgment.[7]
The taxed costs recoverable as counsel fees in N.J.S.A. 22A:2-42 are only applicable in Special Civil Part actions, a court of limited monetary jurisdiction. Thomas v. Saijwani, 249 N.J.Super. 158, 163, 592 A.2d 247 (App.Div.), certif. denied, 126 N.J. 390, 599 A.2d 166 (1991). They are taxed against all judgment debtors, without exception. See Alba v. Sopher, 296 N.J.Super. 501, 505, 687 A.2d 309 (App.Div.1997). The counsel fees are to be calculated and included on the form summons submitted by the plaintiff's attorney, so that the calculated sum can be readily included in the costs allowed by the clerk in the event of a default. See R. 6:1-1(g); R. 6:6-3(a).[8]
The Legislature did not exclude from the broad and mechanistic language of N.J.S.A. 22A:2-42 any situations where attorney's fees awarded on taxed costs under that statute would not be recoverable. The statute's uniform computation of feeswith no exclusionsis entirely consistent with the expedited nature of a Special Civil Part proceeding. Such fees are routinely taxed without the clerk further considering whether the attorney's fees were reasonable and whether the fees were otherwise authorized or excluded under the Court Rules, under contract, or under a different statute. This expedited procedure is well suited to the huge volume of cases filed in the Special Civil Part each year.[9]
For more than a century, attorney's fees have been expressly and consistently allowed in this manner by statute, in the form of the costs of suit taxed against a judgment debtor in our courts of limited monetary jurisdiction. In 1898, the Legislature passed an Act, which provided in part that "[e]very suit of a civil nature at law, . . ., where the debt, balance, . . . or other matter in dispute does not exceed, exclusive of costs, the sum or value of three hundred dollars, shall be cognizable in district courts[.]" L. 1898, c. 228, § 30; see Lettenmaier, supra, 162 N.J. at 137, 741 A.2d 591 (noting that the "precursor" to the current Special Civil Part was the county district court). The 1898 statute contained a provision, which has remained virtually intact and which is now embodied in N.J.S.A. 22A:2-42, prescribing that fees shall be paid "[t]o the attorney of the prevailing party a fee of five per cent[um] on the amount of any judgment; to be taxed by the clerk in the costs against the judgment debtor." L. 1898, c. 130, § 216.[10]
*247 In 1943, the statute "concerning fees and costs in district courts," then codified at N.J.S.A. 22:2-50, was amended to provide that "[t]here shall be taxed by the clerk in the costs against the judgment debtor, to be collected on execution or order in the nature of execution on any final judgment, a fee to the attorneys of the prevailing party, of five per centum (5%) of the judgment." L. 1943, c. 202, § 1. A few years later, in 1950, the Act was amended to include the formula now currently in use, that is, that the attorney for the prevailing party would receive five percent of the first $500 of the judgment and two percent of any excess. L. 1950, c. 219, § 7.[11] Neither of these amendments altered the automatic and uniform nature of the fee award.
In 1983, the county district court was abolished by constitutional amendment, and that former court's limited jurisdiction was transferred to the Superior Court. See Lettenmaier, supra, 162 N.J. at 137, 741 A.2d 591. Because of the "utility of maintaining a court of limited monetary jurisdiction with expedited procedures, the concept of the county district court was preserved by court order, which effectively transferred its former jurisdiction as well as its procedures, virtually intact, to a new division of the Superior Court . . . the Special Civil Part[.]" Pressler & Verniero, Current N.J. Court Rules, comment 1 on R. 6:1-1 to -3 (2011). Through this transition, the Supreme Court transferred all of the district court's cases, judges, and staff to the newly-created Special Civil Part. Ibid. In 1991, the current statute, N.J.S.A. 22A:2-42, was amended, solely to substitute reference to the Special Civil Part for reference to the former "county district court." L. 1991, c. 91, § 271. The statute was not substantively altered, and the percentages recited within it remain intact.
Thus, the present terms of N.J.S.A. 22A:2-42 are substantially similar to those of predecessor statutes dating back to 1898.

C.
We now turn to the text and lineage of the two statutes in Title 17 relied upon by defendant, i.e., N.J.S.A. 17:16C-42(d) and N.J.S.A. 17:3B-40.
N.J.S.A. 17:16C-42 originated in the Retail Installment Sales Act of 1960 ("RISA"), N.J.S.A. 17:16C-1 to -103. See L. 1960, c. 40, § 42(b). RISA generally regulates retail installment contracts, as they are defined in N.J.S.A. 17:16C-1(b). It was intended, in part, to protect consumers by defining and regulating "certain retail installment sales[.]" See L. 1960, c. 40.
As part of RISA's statutory scheme, N.J.S.A. 17:16C-42 prescribes various kinds of charges that the holder of a retail installment contract may collect when the buyer or consumer fails to pay the installments due under such a contract. In particular, subsection (d) of N.J.S.A. 17:16C-42 currently provides that:
The retail installment contract or retail charge account may provide for the payment of attorney's fees not exceeding 20% of the first $500.00 and 10% on any excess of the amount due and payable under such contract or account when referred to an attorney, not a salaried *248 employee of the holder of the contract or account, for collection.

[N.J.S.A. 17:16C-42(d) (emphasis added).]
When the Legislature passed RISA in 1960, it included an almost identical provision, stating that a "retail installment contract may also provide for the payment of attorney's fees not exceeding 20% on the first $500.00 and 10% on any excess of the amount due and payable under such contract when referred to an attorney, not a salaried employee of the holder of the contract, for collection." L. 1960, c. 40, § 42(b).
RISA did not, however, contain any provisions expressly repealing our State's long-standing practice of awarding attorney's fees as taxed costs of suit in the county district court. In fact, RISA, as it was codified in N.J.S.A. 17:16C-50, specifically provided that a sales finance company could not "charge, contract for, collect or receive from any retail buyer . . . any further or other amount for costs . . . other than the charges permitted by this act, except court costs, attorney fees and the expenses of retaking and storing repossessed goods which are authorized by law." L. 1960, c. 40, § 50 (emphasis added). A fair reading of this provision suggests that, when it adopted RISA in 1960, the Legislature contemplated that a finance company could recover both contractual attorney's fees (as provided for under the new statute), as well as the statutory attorney's fees routinely awarded in the county district court as taxed costs of suit.
RISA was amended in 1971 to include revolving credit or retail charge accounts. Again, the statute did not repeal its provision recognizing the otherwise-authorized award of attorney's fees as taxed costs in the district court. L. 1971, c. 409, § 50. The current version of N.J.S.A. 17:16C-50 continues to provide that:
No retail seller, sales finance company, or holder shall charge, contract for, collect or receive from any retail buyer, directly or indirectly, any further or other amount for costs, charges, insurance premiums, examination, appraisal service, brokerage, commission, expense, interest, discount, fees, fines, penalties or other things of value in connection with retail installment contracts or retail charge accounts other than the charges permitted by this act, except court costs, attorney fees and the expenses of retaking and storing repossessed goods which are authorized by law.

[Emphasis added.]
The second provision in Title 17 relied upon by defendant is N.J.S.A. 17:3B-40, a provision that was enacted in 1996 when the Legislature enacted the Market Rate Consumer Loan Act ("MRCLA"). Unlike RISA, MRCLA was not principally aimed at protecting consumers. Rather, it was designed to make New Jersey as attractive as other states for bank credit card operations. See N.J.S.A. 17:3B-29a (reciting the Legislature's objective to "level the playing field" for New Jersey-based banks by allowing certain charges to apply to revolving credit plans in this State).
MRCLA included the current version of N.J.S.A. 17:3B-40, at issue here, which provides that:
If a borrower defaults under the terms of a plan and the bank refers the borrower's account for collection to an attorney or collection agency, not a regularly salaried employee of the bank, for collection, the bank may, if the agreement governing the revolving credit plan so provides, charge and collect from the borrower a reasonable attorney's or collection agency's fee and, in addition, if the agreement governing the plan so provides, the bank may recover from the *249 borrower all court or other collection costs actually incurred by the bank.
[N.J.S.A. 17:3B-40 (emphasis added).]
In another section of MRCLA, the Legislature included a provision allowing recovery of "collection costs," making no reference to restricting fees for in-house counsel. See N.J.S.A. 17:3B-14.

D.
The Legislature is presumed to have been aware, both at the time it adopted RISA in 1960 and at the time it adopted MRCLA in 1996, of the "taxed costs" provisions that have been in existence in our State's courts of limited monetary jurisdiction since 1898 and are now contained in N.J.S.A. 22A:2-42. N.J.S.A. 22A:2-42, and its predecessor statute, have long required, without any stated exception, that specified costs to be taxed against the judgment debtor and paid to the attorney for the prevailing party. See Twp. of Mahwah v. Bergen Cnty. Bd. of Taxation, 98 N.J. 268, 279, 486 A.2d 818, cert. denied sub nom. Borough of Demarest v. Twp. of Mahwah, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985) (noting that the Legislature is presumed to be aware of existing legislation at the time a statute is enacted). Despite the Legislature's presumed knowledge of its own long-standing enactment, neither RISA nor MRCLA contain an express repealer of N.J.S.A. 22A:2-42. In fact, under RISA in particular, the Legislature explicitly contemplated that a finance company could recover both costs (as set forth under RISA) plus attorney's fees that might otherwise be recoverable. See N.J.S.A. 17:16C-50.
In 1991, when the Legislature amended N.J.S.A. 22A:2-42 to substitute a reference to the Special Civil Part for the county district court, it did not further amend that statute to preclude the recovery of taxed costs based upon the services of a creditor's salaried attorneys. No such exclusion was enacted in 1991, even though the Legislature is presumed to have been aware of the restrictive provisions in RISA, in existence since 1960, concerning the recoverability of fees incurred by a creditor's salaried attorneys or employees. N.J.S.A. 17:16C-42(d); see J.S., supra, 202 N.J. at 480, 998 A.2d 409. Likewise, when MRCLA was adopted in 1996, the Legislature again left the counsel fee provision in N.J.S.A. 22A:2-42 untouched.

E.
There being no express repeal of N.J.S.A. 22A:2-42 set forth in either RISA or MRCLA, we next consider whether the fee-related provisions in those statutes have partially repealed N.J.S.A. 22A:2-42 by implication.
As a general principle, "[a] repeal by implication requires clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt." Twp. of Mahwah, supra, 98 N.J. at 280, 486 A.2d 818. "There is a strong presumption in the law against implied repealers," and "[e]very reasonable construction should be applied to avoid a finding of implied repealer." Id. at 281, 486 A.2d 818.
There is no basis to overcome that presumption here. The aims of the three statutes differ, and they can be sensibly harmonized without repeal by implication. It is not inconsistent to allow recovery of counsel fees as taxed costs in the Special Civil Part under N.J.S.A. 22A:2-42, while still prohibiting the recovery of contract-based counsel fees for the work of in-house attorneys under N.J.S.A. 17:16C-42(d) and under N.J.S.A. 17:3B-40.
As we have already highlighted, under N.J.S.A. 22A:2-42, the modest recoverable counsel fee (five percent of the first $500 *250 of the judgment and two percent of any excess) is not based on the actual time and effort expended by a plaintiff's counsel. The provision does not attempt to reimburse the creditor fully for the reasonable costs of its counsel's services. Instead, the award under N.J.S.A. 22A:2-42 operates to shift only a small portion of the burden of litigating the matter to the judgment debtor. See Bancredit, supra, 65 N.J.Super. at 552, 168 A.2d 250.
By contrast, a bank is permitted to recover "reasonable" attorney's fees under N.J.S.A. 17:3B-40, as part of a statute designed to "level the playing field" for banks in New Jersey, N.J.S.A. 17:3B-29c. Such reasonable fees are not capped in N.J.S.A. 17:3B-40 by any percentage of the final judgment.
The holder of a retail installment contract, meanwhile, is permitted under N.J.S.A. 17:16C-42(d) to recover counsel fees, twenty percent of the first $500 and ten percent of the excess. These are significantly higher percentages than the respective five percent and two percent recovery provided for in N.J.S.A. 22A:2-42. As a condition of these more generous fee-shifting percentages, the Legislature reasonably included in N.J.S.A. 17:16C-42(d) a corresponding limitation, restricting such enhanced fees to the services provided to the creditor by its outside counsel. Given these offsetting factors within N.J.S.A. 17:16C-42(d), the provisions of that statute can be easily harmonized with a judgment creditor's unconditional right in the Special Civil Part to counsel fees as taxed costs under the general terms of N.J.S.A. 22A:2-42.
The counsel fees incurred in pursuing collection of credit card debt are recoverable under N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d), regardless of whether a suit is actually filed or whether the bank or holder is ultimately successful in collecting the principal amount owed. The amount of fees that can be potentially recovered, depending upon the terms of the creditor's contract with the debtor, are much higher under N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d), than under the statutory taxed costs mandatorily awarded under N.J.S.A. 22A:2-42.
Fees under N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d) spring out of the terms of a consumer's contract with a bank or credit card company. They may be recoverable even if the bank or credit card company does not litigate the claim to a final judgment. Those fees are not confined to cases in the Special Civil Part. By contrast, the fees under N.J.S.A. 22A:2-42 are nominal and essentially automatic charges, which allow any successful judgment creditor in the Special Civil Part to recapture at least a small portion of the attorney expenses that it incurred in procuring that final judgment.
Given these distinctive features of the cited Title 17 statutes, as contrasted with those expressed within N.J.S.A. 22A:2-42, we agree with the trial court in characterizing the fees recoverable under the Title 17 provisions as "contractual" in nature, and the fees recoverable under N.J.S.A. 22A:2-42 as "statutory" in nature. The two categories of fees in Title 17 and in Title 22A are fundamentally different. Metaphorically speaking, they are as dissimilar as apples and oranges (or perhaps even crabapples and oranges, given the disparity in size). The in-house counsel restrictions in the Title 17 provisions do not, therefore, sensibly flow through to the dissimilar context of fees awarded as "taxed costs" under N.J.S.A. 22A:2-42.

F.
Apart from these textual and structural considerations, the public policies underlying *251 the in-house counsel fee restrictions in Title 17 appear to be aimed at a limited class of litigation, most likely in response to perceived past over-reaching by certain banks and other institutional creditors.[12] These policy concerns are broadly stated in the Uniform Consumer Credit Code of 1974, Unif. Consumer Credit Code § 2.507(b)(2) (Alternative B), 7A U.L.A. 94 (1974) (suggesting the allowance of a contractual reasonable attorney's fee from the consumer "after default and referral to an attorney not a salaried employee of the creditor"). The Comment to that recommended provision in the Uniform Laws states that Alternative B "reflects a policy decision in other consumer transactions of treating attorney's fees[,] not as part of the creditor's general overhead to be indirectly borne by all of his customers[,] but as a charge to be imposed, at least in part, on the defaulting consumer who gives rise to the expense." Id., comment on § 2.507 (Alternative B) (emphasis added).[13] Although neither N.J.S.A. 17:3B-40 or N.J.S.A. 17:16C-42(d) is specifically based on the uniform statute, the in-house counsel restriction substantially follows the approach of Alternative B.
We surely appreciate the legitimate public purposes[14] that the Legislature is attempting to achieve through the in-house restrictions set forth in N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d). However, we do not find those objectives readily applicable to the nominal counsel fees that are awarded as statutory taxed costs under N.J.S.A. 22A:2-42. There is nothing before us to suggest that the modest counsel fees recoverable under N.J.S.A. 22A:2 42capped at $315 on a $15,000 judgmenthave produced a bonanza for creditors in the Special Civil Part.

G.
Prior case law supports our construction of these statutes. Several decades ago, our court in Bancredit, supra, 65 N.J.Super. at 552, 168 A.2d 250, recognized the qualitative distinction between statutory counsel fees awarded as taxed costs under N.J.S.A. 22A:2-42 and counsel fees recoverable under contractual provisions. In Bancredit, the trial court awarded counsel *252 fees to the plaintiff, a holder in due course of a promissory note executed in connection with the purchase of an automobile under a conditional sales contract. These fees totaled fifteen percent of the deficiency, in accordance with the provisions of the note, as authorized by then-applicable N.J.S.A. 17:16B-6(a)(4) (repealed and replaced in RISA with N.J.S.A. 17:16-42(d)).[15]Bancredit, supra, 65 N.J.Super. at 551, 168 A.2d 250. The trial court also awarded the plaintiff's counsel five percent of the total judgment as statutory costs in accordance with N.J.S.A. 22A:2-42. Bancredit, supra, 65 N.J.Super. at 552, 168 A.2d 250.
On appeal, the defendant in Bancredit argued that the trial court had erred in allowing improper "double attorney's fees." Id. at 551, 168 A.2d 250. We rejected that argument, finding:
neither inconsistency nor repetition in the court's allowance of both of these amounts. The [fifteen percent] award was a recognition of the parties' contractual arrangement, its reasonableness sanctioned by statute. It was properly included in the formal judgment. While the amount is designated as "attorney's fees," it is in effect a reimbursement or indemnification of the creditor for estimated legal expenses in effecting collection. It is not conditioned upon the actual institution of suit. Moreover, the obligation created in the note is the property of the holder in due course and not of his attorney. The attorney must still depend, for his compensation, on the credit of his client or on prompt attachment of his statutory lien. The [five percent] allowance [in N.J.S.A. 22A:2-42], on the other hand, is tied to the successful prosecution of suit in the county district court, and is payable directly to the attorney. As a taxed cost of litigation, it is in the nature of a statutorily authorized penalty against the judgment debtor, saddling him with the burden of compensating the creditor's attorney for the latter's litigational duties.

[Bancredit, supra, 65 N.J.Super. at 552, 168 A.2d 250 (emphasis added; internal citations omitted).]
This court in Bancredit was "not dissuaded from [its] position by defendant's reference to Bank of Commerce v. Markakos, 22 N.J. 428, 126 A.2d 346 (1956)," an earlier case in which the Supreme Court had declared unenforceable a contractual provision that provided for attorney's fees in excess of the levels allowed in foreclosure cases under the Court Rules. Bancredit, supra, 65 N.J.Super. at 553, 168 A.2d 250. We explained that:
In the instant case [Bancredit], not only was the parties' contractual arrangement expressly authorized by statute, but, as we have outlined, the taxed costs provision, N.J.S.A. 22A:2-42, was not designed to embrace the subject of the parties' agreement. To accept defendants' argument that the latter statute constitutes the sole barometer of assessed counsel fees would be to render meaningless N.J.S.A. 17:16B-6(a)(4), [now N.J.S.A. 17:16C-42(d)], in the greater area of its potential applicabilityi.e., actions in the county district courts [now the Special Civil Part]. We will not impute illogic to the Legislature if a reasonable construction of its intention can be perceived; here, we accept its altogether logical recognition of the distinction between a contractual arrangement to cover any and all legal *253 expenses attendant upon collection, regardless of whether suit is instituted, and a statutory court-imposed cost allowed solely for the prosecution of suit to final judgment.

[Ibid. (emphasis added).]
Based on these qualitative distinctions, we held in Bancredit that two of the three statutes that are at issue hereN.J.S.A. 22A:2-42 and N.J.S.A. 17:16C-42(d)can logically co-exist without modifying their respective provisions. Consequently, Bancredit acknowledged that a prevailing creditor can recover statutory attorney's fees under N.J.S.A. 22A:2-42, and that party can also recover contractual attorney's fees as permitted by N.J.S.A. 17:16C-42(d). Bancredit, supra, 65 N.J.Super. at 552, 168 A.2d 250; see also Ctr. Grove Assocs. v. Hoerr, 146 N.J.Super. 472, 476, 370 A.2d 55 (App.Div.1977) (holding that an attorney's fee under a lease was reasonable and recoverable, notwithstanding that it was in excess of the statutory fee authorized under N.J.S.A. 22A:2-42); Cohen v. Fair Lawn Dairies, Inc., 86 N.J.Super. 206, 211-12, 206 A.2d 585 (App.Div.) (citing Bancredit for the proposition that statutory and contractual fees are both allowed), aff'd, 44 N.J. 450, 210 A.2d 73 (1965).
Furthermore, concerns about the "double counting" of attorney's fees, as implicated by Bancredit, may be ameliorated, at least to some degree, under the simultaneous operation of the applicable statutes. Although a bank's attorney could receive the modest fees allowed as taxed costs of suit from the judgment debtor under N.J.S.A. 22A:2-42, the bank additionally could lawfully receive "reasonable" attorney's fees under a contract. See also RPC 1.5(a) (requiring that counsel fees be reasonable). In fixing that latter amount, our courts have applied the same test for calculating attorney's fees that it generally uses in other cases involving the award of attorney's fees, i.e., reasonableness. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386, 982 A.2d 420 (2009). "The ultimate goal is to approve a reasonable attorney's fee that is not excessive." Id. at 388, 982 A.2d 420; see also R. 4:42-9.
Thus, in determining the amount of counsel fees to award a prevailing party under a contractual agreement, a court must evaluate the reasonableness of those fees. In making that assessment, the court may take into consideration that the creditor or its attorney had already received a modest statutory fee as a taxed cost under N.J.S.A. 22A:2-42. Hence, the court has the authoritynot under N.J.S.A. 22A:2-42 but under its review of a separate request for contract-based feesto prevent or limit a potential double recovery.
We are unpersuaded by defendant's assertion that the Supreme Court in Lettenmaier, supra, 162 N.J. at 141, 741 A.2d 591, impliedly overruled Bancredit. Defendant construes Lettenmaier to signify that a plaintiff cannot simultaneously recover attorney's fees under either of the Title 17 provisions, N.J.S.A. 17:16C-42(d) or N.J.S.A. 17:3B-40, and also under the general Special Civil Part provision, N.J.S.A. 22A:2-42. We reject that interpretation of Lettenmaier, for the following reasons.
The specific holding of the Court in Lettenmaier, supra, 162 N.J. at 135, 741 A.2d 591, was that counsel fees recoverable in CFA actions under N.J.S.A. 56:8-19 are not to be considered part of the "amount in controversy" in calculating the jurisdictional monetary limit of the Special Civil Part established by Rule 6:1-2(c).[16] *254 The Court reasoned that counsel fees under the CFA, although not specifically denominated in that statute as "costs," can properly be characterized as such within the meaning of Rule 6:1-2(c). Lettenmaier, supra, 162 N.J. at 143, 741 A.2d 591. Even though such counsel fees are not labeled as costs, "they cannot, as a matter of logic, be included in the jurisdictional 'amount in controversy.'" Lettenmaier, supra, 162 N.J. at 143, 741 A.2d 591 (internal citations omitted).
The Court in Lettenmaier explained that its jurisdictional conclusion was bolstered by New Jersey's "longstanding approach to the issue of the nature of counsel fees." Id. at 140, 741 A.2d 591. The Court noted that the Court Rules and several New Jersey statutes specifically refer to the inclusion of allowable counsel fees as "taxed costs." Id. at 140-41, 741 A.2d 591. Within that analysis, the Court cited to N.J.S.A. 22A:2-42, which, as the Court observed, authorizes "the clerk of the Special Civil Part to include an award of counsel fees in the taxed costs, where there is no other authorizing authority." Lettenmaier, supra, 162 N.J. at 140, 741 A.2d 591. The Court further observed that N.J.S.A. 22A:2-42 "comes into play in cases in which counsel fees are not otherwise awardable under the Rules or under a specific fee-shifting provision." Lettenmaier, supra, 162 N.J. at 138, 741 A.2d 591. The Court found that there was similarly no reason why counsel fees awarded under the CFA should not be treated as taxed costs, and thereby excluded from the "amount in controversy" for purposes of establishing jurisdiction. Id. at 139, 741 A.2d 591.
Fundamentally, Lettenmaier was a decision about the Special Civil Part's monetary jurisdiction. The Court in Lettenmaier did not cite to Bancredit. Nor did it address the "double counting" concerns implicated by Bancredit. We read the Court's brief reference to N.J.S.A. 22A:2-42 in Lettenmaier to mean that a party can always recover counsel fees as "taxed costs" even when he or she cannot otherwise recover attorney's fees under the Court Rules, a fee-shifting provision, another statute, or a contract.
As part of its observation about N.J.S.A. 22A:2-42, the Court in Lettenmaier cited to Alba v. Sopher, supra, 296 N.J.Super. 501, 687 A.2d 309. Alba was a landlord-tenant case involving a fee-shifting provision in N.J.S.A. 46:8-21.1, which allows prevailing tenants to recover reasonable attorney's fees. In Alba, these fee-shifting provisions, set forth in the landlord-tenant statutes, took precedence over the general, percentage-based limits on fees awardable as taxed costs in N.J.S.A. 22A:2-42. Alba held that the percentage limits in N.J.S.A. 22A:2-42 were not applicable where "a statute or rule permits the award of other specifically described fees in a [S]pecial [C]ivil [P]art proceeding." Alba, supra, 296 N.J.Super. at 505, 687 A.2d 309.
We explained in Alba that "the fees described in N.J.S.A. 22A:2-42 are the statutory fees allowed in all [S]pecial [C]ivil [P]art cases. They are not the legislatively-permitted fees intended to make whole a tenant whose security deposit was not returned and who is forced to resort to the courts for statutory remedies." Alba, supra, 296 N.J.Super. at 505, 687 A.2d 309 (emphasis added). Accordingly, Alba is consistent with the statutory interpretation that we have adopted in this case, because it allowed a prevailing party, *255 based upon the authority of another statute, to recapture more, not less, than the nominal counsel fees awarded as of right in the Special Civil Part under N.J.S.A. 22A:2-42.
Our interpretation of N.J.S.A. 22A:2-42 also comports with the ruling of the United States District Court in Scioli v. Goldman & Warshaw, P.C., 651 F.Supp.2d 273 (D.N.J.2009). Scioli involved a federal lawsuit brought under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. One of the issues before the District Court in Scioli was "whether New Jersey law permits recovery of both contractual attorneys fees and statutory attorney[']s fees [under N.J.S.A. 22A:2-42] in a successful suit to recover a debt." Scioli, supra, 651 F.Supp.2d at 276. The District Court, largely relying upon Bancredit, supra, 65 N.J.Super. at 538, 168 A.2d 250, concluded that a creditor could recover both statutory fees under N.J.S.A. 22A:2-42 and counsel fees under the debtor's contractual agreement with the creditor. Scioli, supra, 651 F.Supp.2d at 279.
Scioli rejected the debtor's argument that Bancredit is contrary to the "American Rule" disfavoring fee-shifting where such fee-shifting is not authorized by Court Rule, statute, or contract. Scioli, supra, 651 F.Supp.2d at 279; see Myron Corp. v. Atl. Mut. Ins. Corp., 203 N.J. 537, 541, 4 A.3d 999 (2010). As the District Court noted, N.J.S.A. 22A:2-42 is a statutory exception to the American Rule. Scioli, supra, 651 F.Supp.2d at 279. As such, it is "not in direct conflict with New Jersey Supreme Court precedent [otherwise endorsing the American Rule]." Scioli, supra, 651 F.Supp.2d at 279. We agree.
In sum, our interpretation of N.J.S.A. 22A:2-42 meshes with prior case law, including Bancredit, and continues an unbroken tradition of applying the terms of that statute without exception. That long-standing tradition is "of great importance," and weighs heavily against defendant's attempt in this case to advocate a contrary interpretation of the law. See Lan, supra, 80 N.J. at 215, 403 A.2d 437. We reject defendant's exhortation that we repudiate Bancredit and depart from this tradition in applying the plain language of N.J.S.A. 22A:2-42 without qualification.

III.
For these many reasons, we reject defendant's proposed interpretation of the applicable statutes. Instead, we sustain the trial court's conclusion that the provisions in N.J.S.A. 17:3B-40 and N.J.S.A. 17:16C-42(d), barring the recovery by certain banks and lenders of fees for the services of their salaried, in-house attorneys, are inapplicable to the award of counsel fees as taxed costs in the Special Civil Part under N.J.S.A. 22A:2-42. The trial court's denial of defendant's motion for relief from judgment under Rule 4:50-1 is consequently affirmed.[17]
NOTES
[1] The record on appeal does not contain the cardholder agreement, but the agreement is not necessary for our analysis of the legal issues presented.
[2] This is apparently an office affiliated with Chase.
[3] We note that Chase eventually did retain outside counsel to represent it in the trial court in opposing defendant's motion to vacate the counsel fee award under Rule 4:50-1, and then retained another outside law firm to represent it on this appeal.
[4] Defendant does not contest the propriety of these components of the final judgment awarded under N.J.S.A. 22A:2-37.1.
[5] Defendant has not contested the validity of the underlying credit card debt or any meritorious defenses to that amount as issues on the present appeal.
[6] As we have noted, defendant has not appealed this ruling.
[7] For example, on a $15,000 judgment, the taxed costs for the counsel fee would be $315, i.e., $25 (.05 x $500) plus $290 (.02 x $14,500).
[8] As the motion judge pointed out, the certification submitted by plaintiff in support of its motion for default judgment omitted an indication, as required under Rule 6:6-3(a), of "how the amount was calculated," and also omitted a specification of "the statutory provision" involved. R. 6:6-3(a). Even so, those omissions were harmless because the statutory authority for fees under N.J.S.A. 22A:2-42, and the associated calculations, were self-evident.
[9] Those filings totaled 609,648 in 2010. See N.J. Courts, Annual Report 2009-2010 23, 35 (2010). Approximately three quarters of the contract cases filed in the Special Civil Part, excluding small claims, are disposed of by default judgment. See 2006 Suppl. Report of the Supreme Court Comm. on Special Civil Part Practice, Appendix BDC Docket Type Statistics (2006); see also Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 137, 741 A.2d 591 (1999) (noting that the procedures governing actions in the Special Civil Part are designed to limit the costs of instituting and trying actions, to abbreviate time periods, and to restrict discovery).
[10] The statute was amended in 1914, changing the word "attorney" from singular to plural. L. 1914, c. 130, § 1.
[11] In 1953 the Legislature established Title 22A, but it did not change the substance of the former N.J.S.A. 22:2-50 in any way bearing on this appeal. L. 1953, c. 22, § 1.
[12] In that vein, we note that several opinions from the New York courts in the 1970s found abuses by certain lenders who had been overcharging consumers for collection costs. See Mead v. First Trust & Deposit Co., 60 A.D.2d 71, 400 N.Y.S.2d 936, 937 (1977) (arising out of efforts of the New York Attorney General and the state courts to protect the public from lenders' charges for unearned legal services, in cases where consumers had defaulted on their obligations); see also Thompson v. Chem. Bank, 84 Misc.2d 721, 375 N.Y.S.2d 729, 739-40 (Civ.Ct.1975) (disallowing a bank to recover counsel fees under contractual provisions on a percentage basis that had exceeded the salaries that the bank paid to its attorneys to pursue collections). The New York court in Thompson likened such excess recoveries to "a hidden charge to avoid the usury laws." Id. at 738. The court noted that these "evils" could be avoided by encouraging banks to refer such collection cases to outside counsel because "[u]ndoubtedly many competent [outside] lawyers would be willing to undertake such business for much less." Ibid.
[13] Alternative A, by contrast, disallows the creditor's recovery of a counsel fee, regardless of whether the creditor utilizes outside counsel. Unif. Consumer Credit Code, supra, § 2.507 (Alternative A).
[14] It does occur to us, however, that one might argue that these provisions in the Title 17 statutes may actually work to the disadvantage of consumers and credit card holders because they may raise the costs of doing business in high-volume collections. Conceivably, it may be more efficient for a creditor (and, indirectly, for debtors who are charged with the creditor's counsel fees), to utilize in-house salaried attorneys rather than outside counsel, who are commonly paid on an hourly billing or contingent fee basis.
[15] The promissory note provided, in part, that the defendant agreed "to pay all expenses of collection including [fifteen percent] attorney's fees if placed in the hands of an attorney for collection." Bancredit, supra, 65 N.J.Super. at 551, 168 A.2d 250.
[16] Rule 6:1-2(c) provides that "[w]here the amount recoverable on a claim exceeds the monetary limit of the Special Civil Part . . ., the party asserting the claim shall not recover a sum exceeding the limit plus costs and on the entry of judgment shall be deemed to have waived the excess over the applicable limit."
[17] We do not reach Chase's undeveloped argument, alluded to only obliquely in a footnote in its appellate brief, that the counsel fees restrictions set forth in Title 17 as a matter of state law are preempted by federal law. That argument was not litigated nor decided below, and there is no need for us to comment upon it here. Ins. Co. of N. Am. v. Gov't Empls. Ins. Co., 162 N.J.Super. 528, 537, 394 A.2d 91 (App.Div. 1978). Our decision on the merits in favor of plaintiff also eliminates any need to discuss retroactivity.