R.J. JONES, J.S.C.
*438 Rutgers University police arrested defendant Bentee M. Goines on July 17, 2016, in New Brunswick and charged him with driving *439 while intoxicated. This appeal requires me to decide whether the officer had jurisdiction to stop, arrest, and charge Goines. The municipal court judge held that the officer lacked jurisdiction to do so and dismissed the charges. I reach a different conclusion.
I. Background
Rutgers University Police Officer Angelina Vartanova stopped Goines just south of the ramp from Ryders Lane onto Route 1. According to the officer, Goines illegally crossed a double yellow line to pass another *148 car near a traffic circle where Ryders Lane and George Street meet. After seeing this, Officer Vartanova turned on the overhead lights to her police car and followed Goines to the Route 1 ramp, where she pulled him over. This occurred in the City of New Brunswick.
After performing field sobriety tests and making other observations, Vartanova brought Goines to the police station for an Alcotest. The test showed a 0.14% blood-alcohol level, and as a result, police charged him with driving while intoxicated, which violates N.J.S.A. 39:4-50. When Goines appeared in the New Brunswick Municipal Court to respond to the charges three months later, his attorney moved to dismiss the summons for lack of jurisdiction.
According to Goines, a 2004 memorandum of understanding between Rutgers and New Brunswick only allows Rutgers police to enforce motor vehicle laws on certain city streets. Without dispute, the offense and arrest did not occur on one of those streets. As a result, the municipal court judge agreed with Goines and granted the motion. This appeal followed.
II. Standard of Review
The State may appeal to the Law Division as of right when a municipal court enters a pretrial order dismissing a complaint. R. 3:24(b). On appeal, both legal and factual issues are reviewed de novo. C.S. v. Middletown Twp. Bd. of Educ., 259 N.J. Super. 340, 343, 613 A.2d 492 (App. Div. 1992). The appeal here *440 involves a purely legal issue. Thus, I must decide the issue anew, with no special deference to the municipal court decision.
III. Analysis
The issue here is straightforward: Did Rutgers police have legal authority to stop and arrest Goines, as well as charge him with driving while intoxicated? More specifically, the question is whether Rutgers police had jurisdiction even though the offense took place on a New Brunswick street not covered by the memorandum of understanding between the city and university. In deciding this issue, several statutes come into play, and this appeal turns on their interpretation. Before getting to that, though, it is helpful to set out the law regarding jurisdiction generally.
Jurisdiction is the predicate to a legal arrest. State v. Cohen, 73 N.J. 331, 342, 375 A.2d 259 (1977). Typically, police officers can only exercise the powers of their office "within the confines of the jurisdiction which employs them." Ibid. Therefore, absent legislative or other legal authority, if a police officer arrests someone outside the officer's home jurisdiction, the arrest is illegal. Ibid. In addition, evidence arising from the arrest will be suppressed. See State v. Williams, 136 N.J. Super. 544, 548, 347 A.2d 33 (Law Div. 1975) (recognizing that evidence from an illegal arrest is normally suppressed).
Knowing how university police departments function is also helpful. Title 18A, which governs higher education in New Jersey, permits colleges and universities to create police forces with the approval of the Superintendent of the State Police. N.J.S.A. 18A:6-4.1. University police officers get the same training as State and local police. Ibid.; N.J.S.A. 18A:6-4.4. Moreover, unless restricted by the university, they have the same authority in "criminal cases and offenses against the law" as do other officers in New Jersey. N.J.S.A. 18A:6-4.5.
Title 18A also gives university police departments authority to enforce traffic laws. N.J.S.A. 18A:6-4.7. It allows university police "while on duty and within the territorial limits of the municipalities *441 in *149 which [the university is] located" to "enforce the laws regulating traffic and the operation of motor vehicles" with the "concurrence" of the local police chief in the municipality where the university is located. Ibid. The Legislature enacted all these provisions in 1970. See L. 1970, c. 211, § 6. They came in the wake of civil disturbances on many of New Jersey's campuses in the late 1960s. See Ralph A. Dungan, Rpt. to the N.J. Legislature Concerning the Recent Events and Disturbances at the Newark and Camden Campuses of Rutgers, The State Univ. (Mar. 31, 1969).
When originally introduced, the bill authorizing university police departments to enforce traffic laws did not include the "concurrence" language, which was added after Governor William T. Cahill conditionally vetoed the bill. See Governor's Conditional Veto Statement to S. 764 (Sept. 17, 1970). According to Governor Cahill, "[s]pecial police appointed pursuant to [the] bill [had] sufficient responsibility within the boundaries of the campus where they [were] employed." Ibid. He went on to note that "[w]hile in some instances it may be desirable for them to render assistance to municipal police in connection with traffic control outside campus boundaries, this should only be done at the request of the local police chief." Ibid.
When read in isolation, Title 18A might suggest that Goines has a winning argument, namely, that Rutgers police did not have authority to stop, arrest, and charge him, because the facts leading to the arrest took place on a road not covered in the concurrence agreement (i.e., memorandum of understanding) between Rutgers and New Brunswick. If only Title 18A governed, then police logically might not have had jurisdiction for the arrest, and the arrest would therefore have been illegal.
But the analysis cannot end with Title 18A. The Motor Vehicle Code, Title 39, allows "any law enforcement officer" to arrest someone who commits a moving violation, or more on point, violates N.J.S.A. 39:4-50, which prohibits driving while intoxicated:
Any law enforcement officer may, without a warrant, arrest any person violating in his presence any provision of chapter 3 of this Title, or any person ... violating in *442 his presence any provision of chapter 4 of this Title. A law enforcement officer may arrest without a warrant any person who the officer has probable cause to believe has operated a motor vehicle in violation of R.S. 39:4-50... regardless of whether the suspected violation occurs in the officer's presence ....
[ N.J.S.A. 39:5-25 (emphasis added).]
The Appellate Division has held that the broad language of this statute (which contains no territorial limitations) permits municipal police officers to arrest traffic offenders outside the borders of their municipalities. State v. O'Donnell, 192 N.J. Super. 128, 130, 469 A.2d 38 (App. Div. 1983) (finding jurisdiction to arrest a drunk driver even though the arresting officer acted outside of the town that employed him).
When the court decided O'Donnell, N.J.S.A. 39:5-25 did not begin with the phrase "[a]ny law enforcement officer," but rather, only allowed a "constable, sheriff's officer, police officer, peace officer, or the director" to arrest those committing traffic violations. Id. at 130, 469 A.2d 38. The Legislature deleted the old language and substituted the phrase "[a]ny law enforcement officer" in 1994 (post- O'Donnell ). See L. 1994, c. 184, § 4.
Nothing in the statute or legislative history explains why the Legislature made this change. Nevertheless, the amendment was part of a comprehensive set of revisions to the then-existing statutory scheme *150 that prohibited driving while intoxicated. See ibid. (setting out the changes). For example, the revisions allowed police officers at the scene of a serious accident to test the driver for blood-alcohol levels. See L. 1994, c. 184, § 2. They also increased the penalties for refusing to submit to a blood-alcohol test (and made them more closely match those associated with a conviction for driving while intoxicated). Ibid.; Assembly Judiciary, Law & Pub. Safety Comm. Statement to A. 763 (March 21, 1994). And notably, they added language clarifying the ability of law enforcement personnel to arrest those suspected of drunk driving, even if the violation did not occur in the officer's presence (assuming, of course, that the officer had probable cause for the arrest). *443 See L. 1994, c. 184, § 4.[1]
The question that all this raises is straightforward: Why did the Legislature choose to substitute the phrase "[a]ny law enforcement officer" for the circumscribed list of officials contained in the original enactment? One could argue, as Goines does, that the change merely updated the language by omitting outdated law enforcement titles (constables, for example). This argument might seem logical at first blush.
But if the change represented simple house cleaning, there would be no need for the Legislature to use such a broad catchall phrase. It could have simply listed the types of officers to whom it was granting authority. Moreover, as noted above, the change is post- O'Donnell. A legislature is presumed to know about the judicial interpretations of its statutes. Chase Manhattan Bank v. Josephson , 135 N.J. 209, 227, 638 A.2d 1301 (1994). Thus, the Legislature knew that courts had interpreted N.J.S.A. 39:5-25 to grant statewide jurisdiction for traffic offenses. That being the case, it would be odd for the Legislature to have used the phrase "[a]ny law enforcement officer" without knowing the ramifications. Goines believes this is the case, but I don't believe the Legislature acted in so sloppy a manner.
Beyond this, one cannot look at the amendment in isolation. As noted above, the Legislature made the change while simultaneously strengthening drunk driving laws. This also suggests that the expansive language was no accident: it increased the number of officials with authority to arrest and charge those believed to be driving drunk. Thus, interpreting the statute to give university police additional jurisdiction is consistent with the theme of the amendments.
*444 Additional jurisdiction is also consistent with the statutory scheme itself. "The overall scheme of [drunk driving] laws reflects the dominant legislative purpose to eliminate intoxicated drivers from the roadways of this State." State v. Tischio, 107 N.J. 504, 514, 527 A.2d 388 (1987). Reading N.J.S.A. 39:5-25 to expand the number of police officials available to enforce these laws is consistent with this public policy. Moreover, like the interpretation given to N.J.S.A. 39:5-25 in O'Donnell, the interpretation I am giving that statute here "is consistent with the recognition that many motor vehicle violations, while not graded crimes, nevertheless pose an extremely grave menace to the public safety and welfare." O'Donnell, 192 N.J. Super. at 130, 469 A.2d 38.
*151 One might argue that the canons of statutory construction should lead to a different result. Generally, a specific statutory declaration prevails over a more general one. Williams v. Am. Auto Logistics , 226 N.J. 117, 126, 140 A.3d 1262 (2016). Thus, because N.J.S.A. 18A:6-4.7 deals more specifically with university police and their jurisdiction, one might find that this statute should prevail over the more general jurisdiction set out in N.J.S.A. 39:5-25.
This argument has a major flaw: the timing of the enactments. The Legislature is also presumed to be aware of its long-standing enactments. Chase Bank USA, N.A. v. Staffenberg, 419 N.J. Super. 386, 402, 17 A.3d 239 (App. Div. 2011). Therefore, when it changed the language of N.J.S.A. 39:5-25 from a list of different kinds of officers to the phrase "[a]ny law enforcement officer," the Legislature presumably knew university police were previously barred from conducting traffic control without the concurrence of the municipal police chief.
Even knowing this, the Legislature did not choose to limit the effect of the new language of N.J.S.A. 39:5-25 to exclude university police officers. The Legislature did not, for example, say that "any law enforcement officer, except for an educational-institution police officer under R.S. 18A:6-4.1" could stop drunk drivers; it said any law enforcement officer could. This suggests that the *445 amendment to N.J.S.A. 39:5-25 was intended to broaden the statute's jurisdictional grant.
The next question, then, is whether the interpretation I am giving N.J.S.A. 39:5-25 can be squared with the language of N.J.S.A. 18A:6-4.7, which was left intact. It can. Nothing suggests that the Legislature added the "concurrence" language because it wanted to restrict university police officers from enforcing violations occurring right before their eyes. As the legislative history reveals, the goal of the "concurrence" language was to prevent university police from being overtaxed. F.J. McCaffrey, Statutory Construction 86 (1953) (noting how courts look at the purpose of and policy behind statutes when harmonizing them). The legislative history of N.J.S.A. 18A:6-4.7 does not indicate that the Legislature meant to thwart duly appointed and trained law enforcement officers from stopping drunk drivers who commit the violation in their presence. What's more, to interpret the statute in this manner is illogical, as it would render these officers impotent to stop dangerous drivers when they see them.
Beyond this, N.J.S.A. 39:5-25 recognizes that a drunk driver requires immediate attention, as failure to respond immediately endangers the public. By contrast, N.J.S.A. 18A:6-4.1 is geared toward routine patrols and traffic control (as explained in Governor Cahill's veto message). This is not a case where university police were called upon to conduct traffic control or routinely patrol outside the boundaries of their campus. Rather, it is a case where university police happened upon a drunk driver and needed to respond.
The situation here is akin to a municipal police officer who sees a violation outside the borders of the municipality that employs the officer. There are a variety of reasons officers leave their town's borders. Three examples include prisoner pickups and drop-offs, meetings, and quicker routes to remote areas within their town's borders. These types of examples apply equally to university police. Logically, university police officers should not be handcuffed simply because they happen to be outside the borders *446 of the university, just as municipal police officers are not handcuffed by the borders of their employing towns. *152 Finally, nothing about the facts of the case involving Goines suggests that Rutgers police were routinely patrolling New Brunswick streets or conducting traffic control on those streets. Thus, the facts of the Goines case more aptly call for the court to apply N.J.S.A. 39:5-25.
IV. Conclusion
It boils down to this: I find that Rutgers police had statutory authority to stop, arrest, and charge Goines on July 17, 2016. Thus, on de novo review, I deny the motion to dismiss. The decision of the municipal court is reversed, and the matter is remanded for further proceedings. I will issue an order consistent with this opinion.

The added language reads as follows: "A law enforcement officer may arrest without a warrant any person who the officer has probable cause to believe has operated a motor vehicle in violation of R.S. 39:4-50 or section 5 of P.L. 1990, c. 103 (C:39:3-10.03), regardless of whether the suspected violation occurs in the officer's presence." L. 1994, c. 184, § 4.